IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ALAN BRADLEY,<br>Plaintiff<br><br>vs.<br><br>GORDON R. ENGLAND,<br>Secretary of the U.S.<br>Department of the Navy,<br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. NO. 04-412ML |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

## I. INTRODUCTION

Plaintiff, Alan Bradley ("Bradley"), alleges that he is an "individual with a disability", as defined by 29 USC §706(8). Second Amended Comp. ¶2. He claims his disabilities include epilepsy, a lazy eye, and a deformed shoulder. Bradley Depo (5/30/06) at 39-40,[1] Summary Judgment Appendix at A 5-6.[2] In his complaint, Bradley alleges that the Navy discriminated against him based on his disability in three separate employment decisions.[3] The first decision involved two Housing Manager Assistant positions for which he was not selected in September of 1999. The second decision

---

1 Bradley's deposition extended over four different dates. It will be cited herein as Bradley Depo (Date).

2 For ease of reference, the documents cited herein are reproduced and separately numbered ("A__") in the Summary Judgment Appendix (Appendix) attached to Defendant's Statement of Material Facts.

3 Although Bradley alleges that he was subjected to both disability discrimination and retaliation for prior EEO activity, he does not specifically allege that some acts were retaliatory and others discriminatory. For purposes of this motion, we assume that each act of which he complains is alleged to have been both discriminatory and retaliatory. Unless otherwise indicated, references herein to discrimination also include plaintiff's claims of retaliation.

involved a vacancy announcement for two Housing Manager Assistant positions that were announced in May of 2001 but were subsequently cancelled and never filled. The third decision involved the temporary detail of Victor Ramsey to a Housing Manager Assistant position in May of 2002.

For the following reasons, summary judgment should enter for the Defendant:

1. With respect to the September 1999 Housing Manager Assistant positions, Bradley has failed to exhaust his administrative remedies because he did not contact an EEO counsellor within 45 days of his non-selection.

2. With respect to the cancelled May 2001 job announcements, Plaintiff cannot establish a prima facie case of disability discrimination. Bradley cannot offer evidence that he was treated differently than the other applicants for the May 2001 jobs, because the positions were cancelled and no one was selected.

3. With respect to the cancellation of the 2001 vacancy announcements and the 2002 temporary detail of Ramsey to a housing management assistant position, Plaintiff has failed to demonstrate that the legitimate reasons offered by the Defendant are pretextual, and that the true reasons for the employment decisions were discriminatory.

4. Plaintiff cannot establish his retaliation claims, because he a) failed to contact an EEO Counselor within 45 days of his non-selection for the 1999 jobs, b) cannot demonstrate a causal link between his EEO activity and the cancellation of the 2001 vacancy announcements or the decision to temporarily detail Ramsey to Housing, and c) cannot demonstrated that the non-discriminatory reasons offered by the Navy were a pretext for discrimination.

## II. **FACTS**

In support of this Motion, Defendant relies on the facts set forth in the Defendant's Statement of Facts as to Which There Is No Genuine Dispute and the supporting documents in the Appendix attached thereto which are specifically incorporated herein. For the convenience of the Court, however, we will summarize those facts herein.

Plaintiff began working for the United States Navy in May of 1985. Bradley Depo (5/26/06) at 11; A 7. In 1988, Bradley was a Housing Management Assistant with the Navy. Bradley Depo (5/26/06) at 26; A 8. His duties required him to drive to different housing units to inspect the properties. Bradley Depo (5/26/06) at 28-29; A 9-10. While driving a government vehicle between housing units in 1988, he was involved in a car accident. Bradley Depo (5/26/06) at 30-31; A 11-12. Following that accident, which Bradley reported was the result of an epileptic seizure, Bradley Depo (5/26/06) at 35; A 16, it was agreed that Bradley would no longer drive a car as part of his job responsibilities. Bradley Depo (5/26/06) at 37-38; A 17-18. Bradley's job duties were modified so that the bulk of his duties could be performed in the office. Bradley Depo (5/26/06) at 31-34; A 12-15. When Bradley needed to go to a different location, another employee or a contractor's employee would drive him. Bradley Depo (5/26/06) at 31; A 12. Bradley never complained about this modification of his duties. Indeed, Bradley was relieved that he would no longer have to drive on the job, because he believed it was not safe for him to drive. Bradley Depo (5/26/06) at 37-38; A 17-18. He thought the Navy treated him fairly in making these accommodations. Bradley Depo (5/26/06) at 38; A 18.

In June of 1999, the Navy advertised two GS-7 Housing Management Assistant positions. Bradley Depo (5/26/06) at 105; A 27. Bradley applied for these positions but was not selected. Bradley Depo (5/26/06) 105-06; A 27-28. The positions were awarded to two other employees: Jamie Theibault and Mary Beth Oliveira. Bradley Depo (5/26/06) at 107; A 29. Bradley learned that he was not selected by a letter dated September 29, 1999, which he received in early October 1999. Bradley (5/26/06) at 107, 115; A 29, 30.

Even though Bradley believed that the Navy was discriminating against him by not selecting him for the jobs, he chose not to contact an EEO counselor, because he believed other similar positions were likely to become available soon. Bradley Depo (5/26/06) at 115-16; A 30-31. Additionally, he was on paternity leave and was more interested in caring for his children than pursuing his EEO claims. Bradley Depo (5/26/06) at 119-20; A 33-34. In December of 1999 Bradley learned that the existing Housing Management Assistant jobs were being reclassified from GS-7 to GS-9 positions. Bradley Depo (5/26/06) at 116; A 31. The reclassification effectively barred Bradley from applying for future Housing Management Assistant vacancies, because, as a GS-6 employee, he was not eligible to apply for a GS-9 position. Bradley Depo (5/26/06) at 99-100; A 25-26. Bradley does not claim the Housing Management Assistant positions were reclassified to the GS-9 level in an attempt to discriminate against him. Bradley Depo (5/26/06) at 119; A 33. Despite being aware that he would not have the opportunity to apply for these future positions, he still did not contact an EEO counselor about his non-selection at this time. Bradley Depo (5/26/06) at 117; A 32.

Bradley was familiar with the employment discrimination complaint process. Bradley Depo (5/26/06) at 38-39; A 18-19. He knew that any complaint of discrimination had to be initiated by contacting an EEO counselor within (at most) 45 days of the act of discrimination. Bradley Depo (5/26/06) at 40-41; A 20-21. Even though he knew of the time limits and believed he had been subjected to discrimination when he received the September 29, 1999, letter, Bradley did not contact an EEO counselor until March 25, 2000, almost 180 days after he was advised that he was not selected for the jobs. Bradley Depo (5/26/06) at 115-117; A 30-32. He subsequently filed a formal EEO complaint regarding his non-selection.

Bradley and the Navy settled his complaint regarding his non-selection for the 1999 jobs in a Settlement Agreement signed January 24, 2001. A 46-47. In the settlement, Bradley agreed to withdraw his complaint of discrimination and the Navy agreed to announce new Housing Management Assistant positions in Newport at both the GS-7 and GS-9 levels, for a period of two years. Id. The Navy also agreed to give Bradley priority consideration for those positions. Id. Bradley's claim regarding his non-selection for the 1999 positions is before the Court, notwithstanding the Settlement Agreement, because the claim was reinstated by the EEOC.[4]

[4] After the Navy cancelled two vacancy announcements in 2001, Bradley filed a complaint alleging that the Navy had breached of the Settlement Agreement. The EEOC Office of Federal Operations held that "upon cancellation of the vacancy announcement and the likelihood that such positions would be "contracted out," the agency effectively abolished its ability to give complainant priority consideration for a position in Housing, thus rendering the agency unable to provide complainant the promised consideration in exchange for the withdrawal of his complaint." Bradley v. England, Decision Reinstating Complaint EEOC OFO December 21, 2004; A 48-52. The Commission found the Settlement Agreement to be void for lack of consideration, and reinstated the complaint "at the point at which processing ceased." Id.

In May of 2001, two Housing Management Assistant positions were advertised at the GS-7 and GS-9 levels. Bradley Depo (5/26/06) at 121 and 123; A 35-36 and Depo Exhibit 6; A 43-45. Bradley applied for the positions. Bradley Depo (5/26/06) at 123; A 36. Captain Ruth Cooper (Cooper), commanding officer at Naval Station Newport at the time, told the Director of Housing that Bradley would receive priority consideration for one of the jobs. Cooper Depo at 35; A 58. Because Bradley was a likely candidate to fill one of the Housing Manager Assistant vacancies, Cooper discussed with the Housing Director and other employees ways to accommodate Bradley's inability to drive a motor vehicle. Cooper Depo at 35-37; A 58-60; Deposition of Karen Peckham at 12; A 69.

On June 14, 2001, there was a meeting at Newport between Captain Cooper, Alan Shannon, and Jana Hubner, among others. Hubner was with the Office of Navy Housing at Naval Facilities Command Atlantic. In that position, she "oversaw Navy housing operations across 50 naval installations in the Eastern United States, Caribbean, Mediterranean, [and] Europe," including Newport. Deposition of Jana Hubner at 4; A 70. This meeting included a discussion of upcoming changes to the operations of Navy Housing at Newport. The discussions included a Navy-wide Functionality Assessment (FA) of housing operations, [5] a Navy-wide Commercial Activity (CA) or A76 study,[6] and a Public Private Venture (PPV).[7] There was also a discussion about extending a "Pilot Project" of private housing management, which was ongoing in New Hampshire, into Newport.[8] Although Captain Cooper, Alan Shannon, and Jana Hubner had different recollections of which program was the focus of the meeting,[9] all of these programs

---

5 Cooper Depo at 26-27; A 54-55; Shannon Depo at 11-12; A 80-81.
6 Shannon Depo at 11-12; A 80-81.
7 Shannon Depo at 11-12; A 80-81.
8 Hubner Depo at 8 and 10; A 71-72; Shannon Depo At 13-15; A 82-84.
9 Captain Cooper recalled that the focus of the meeting was on a Functionality Assessment. Cooper Depo at 30; A 56. Alan Shannon recalled that the initial reason for

involved some form of privatization of the operation of Navy housing in Newport. Hubner Depo at 22-23, 30, 32; A 74-75, 77-78; Shannon Depo at 11-12; A 80-81. Implementation of any one of these programs would have resulted in a smaller civilian-employee housing staff in Newport. Hubner Depo at 23, 30, 40; A 75, 77, 79; Shannon Depo at 12, 31; A 81, 86.

Hubner advised that instead of filling vacant positions in Housing with civilian employees, they should try to fill the positions with contract employees. Hubner Depo at 27; A 76. She described using contract employees as "a tool that was being used in regards to privatization. The goal was that we wanted to minimize impact to the staff as Navy housing transitioned from government-owned and operated to privatized." Hubner Depo at 27; A 76. Cooper, who viewed Hubner as "a higher echelon headquarters member staff," understood Hubner to be making a "strongly recommended and strongly encouraged statement," "that [she] listened to." Cooper Depo at 79-80; A 65-66. Cooper and Shannon discussed the recommendation not to fill the vacant housing positions, and the advertisements were cancelled on June 21, 2001, one week after the meeting with Jana Hubner. Cooper Depo at 81-82; A 67-68; Shannon Depo at 32; A 87.

On approximately July 12, 2001 Cooper met with the employees who had applied for the cancelled Housing Manager Assistant positions. Bradley Depo (5/26/06) 123-25; A 36-38. She explained that the Housing Department was coming under study to either go into privatization or some other reorganization, and that as a result, a decision had been made not to fill the positions. Bradley Depo (5/26/06) 125; A 38. Later, Cooper

---

the meeting was the possibility of extending a pilot project from New Hampshire to Newport, but that the other privatization options were addressed. Shannon Depo at 13-14; A 82-83. Hubner testified that the focus of the meeting was the Pilot Project, but that the Functionality Assessment may also have been discussed. Hubner Depo at 8 and 10; A 71, 72.

and Bradley met and discussed the cancellations again. Bradley Depo (5/26/06) 128-29; A 40-41. Cooper explained that Hubner had advised her that the Navy was considering contracting out its housing, and that this was the basis for the decision to cancel the announcements. Bradley Depo (5/26/06) 127-129; A 39-41. Bradley believed that Cooper was telling him the truth. Bradley Depo (5/26/06) 129; A 41. He did not believe that the reasons were "trumped up" to discriminate against him, and believes that the reasons given were legitimate business reasons for the actions taken. Bradley admits that he has no evidence that this explanation was false. Id. Because of Bradley's concern that this would interfere with his settlement agreement, Captain Cooper offered to extend that agreement for two more years. Bradley Depo 130; A 42. Bradley refused the offer. Bradley Depo 130; A 42.

Less than one year later, a formal Navy-wide hiring freeze was put into place for Housing positions like the ones that had been cancelled. Cooper Depo 78; A 64; Shannon Depo at 34; A 88. Approximately one month later in May of 2002, Mr. Victor Ramsey ("Ramsey") was detailed to fill a vacant Housing Manager Assistant position for six months. Bradley Depo (5/30/2006) at 22, 26; A 1, 4. The position was not advertised as a permanent position because of the hiring freeze, which prohibited filling positions with full time permanent employees.

Captain Cooper considered temporarily detailing Bradley to that position, but decided not to, because Bradley was then an employee in the Public Works Department. Cooper Depo 61; A 61. Public Works was itself undergoing an A76 study of privatization. Cooper Depo 61; A 61. Cooper feared that, if Bradley were transferred out of Public Works in order to take a temporary position with housing, his public works position could be viewed as unnecessary, since the Department was functioning without

someone doing that work, anyway. If that was the conclusion, Bradley's position in Public Works could be permanently eliminated. Cooper Depo 61-63; A 61-63. As a result, at the end of the temporary detail, Bradley could be left without any job to return to. As James Allen, then the President of the Local Union representing Bradley, put it: if that happened, "Bradley would be in trouble at the time." Allen Depo 56; A 89. Cooper told Bradley that this is why she did not place him in that position temporarily. Bradley Depo (5/30/2006) at 23-24; A 2-3.

Leaving Bradley's Public Works position vacant during the privatization study could also have had adverse consequences for the Public Works Department. Cooper Depo at 63; A 63. If the Study concluded that there was no need for someone to do Bradley's job, Public Works could lose the man-hours associated with that position, depriving them of a replacement employee for Bradley. Cooper Depo at 62-63; A 62-63. Cooper decided that this scenario was neither in the best interest of Bradley nor of the Navy, since it did not guarantee Bradley a position at all in six months and could cause the Public Works Department to lose a slot for an employee to perform those duties. Cooper Depo at 63; A 63. Ramsey's detail to the Housing Manager Assistant lasted for 180 days and he was then transferred back to his old position within the Housing Department. Bradley Depo (5/30/2006) at 22, 26; A 1, 4.

Cooper's, Shannon's, and Hubner's concerns about the impact of the privatization studies proved to be well founded. The Navy subsequently entered into a Public Private Venture to provide housing in Newport. Shannon Depo at 22; A 85; Bradley Depo (5/26/2006) at 128-29; A 40-41; Hubner Depo at 21; A 73. The housing units which were formerly owned and maintained by the Navy have been transferred to a private

corporation under a long term lease. As a result of the PPV, there are now fewer employees in the Housing Department in Newport. Hubner Depo at 23; A 75.

III. ARGUMENT

A. SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of fact for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(internal quotations omitted). Bradley has the burden in this case of providing evidence to establish the elements of his claims. Since he cannot do so, summary judgment in favor of Defendant is appropriate.

**B. Failure to Exhaust Remedies as to the September 1999 Positions**

Disability discrimination claims under the Rehabilitation Act, like Title VII claims, require a plaintiff to exhaust administrative remedies as a condition to filing suit in federal court. Velazquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000); Roman-Martinez v. Runyon, 100 F.3d 213, 219 (1st Cir. 1996).[10] Exhaustion of administrative

---

[10] The First Circuit has held that Title VII cases can be "drawn freely upon" for ADA cases. Dichner v. Liberty Travel, 141 F.3d 24, 29-30 n.5 (1st Cir. 1998). See EEOC v. Amego, Inc., 110 F.3d 135, 145 n. 7 (1st Cir.1997) (recognizing that "the ADA is interpreted in a manner similar to Title VII"); see also Serapion v. Martinez, 119 F.3d 982, 985 (1st Cir.1997). Because the standard under the Rehabilitation Act is the same standard as under the ADA, see Calero-Cerezo v. US Dept of Justice, 355F.3d 6, 11 n.1 (1st Cir. 2004), precedent in Title VII cases can also be relied upon in Rehabilitation Act cases.

remedies, includes complying with the requirement under 29 C.F.R. 1614.105(a)(1) that an aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action. Danzig, at 794. Failure to exhaust administrative remedies bars the action from federal court. Danzig, 234 F.3d at 794 (summary judgment appropriate where there is a failure to exhaust administrative remedies); Roman-Martinez, 100 F.3d at 219 (failure to raise claims of disability discrimination in a timely manner through the administrative process bars a disability discrimination suit). In this case, plaintiff has failed to exhaust these remedies as to his allegations of discrimination in the 1999 hiring of two Housing Manager Assistant positions, because he did not contact an EEO counselor within 45 days.

Bradley admits he learned of the decision not to hire him (a decision made in September 1999) in early October, 1999. Bradley Depo (5/26/06) at 107, 115; A 29, 30. He also stated that he believed he was being discriminated against when he received the letter. Bradley Depo (5/26/06) at 115; A 30. He knew he was required to contact an EEO counselor within 45 days of the alleged discriminatory action. For his own reasons, he did not contact an EEO counselor within this time frame. His first contact with an EEO counselor was in March of 2000 – almost 180 days after the employment decision became known to him. Bradley Depo (5/26/06) at 115,117; A 30, 32.

Because this contact did not occur within the required 45 day time frame, Bradley's claims relating to the September 1999 hiring are barred by his failure to exhaust administrative remedies. Since there is no genuine dispute as to these facts, Defendant is entitled to summary judgment on plaintiff's claims concerning the 1999

non-selection and any other conduct occurring more than 45 days before the March 25th contact with an EEO counsellor (before February 8, 2000).

**C. There Was No Disparate Treatment as to the May 2001 Positions**

In employment discrimination cases, the Court applies the familiar burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green, 411 US 792 (1973). See also Raytheon Co. v. Hernandez, 540 U.S. 44 (2003). Initially, "plaintiff has the burden . . . of proving . . . a prima face case of discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Plaintiff's proof of a prima facie case raises a presumption of discrimination. St. Mary's Honor Center, supra, 509 U.S. 502, 506 (1993); Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995) The burden then shifts to the defendant to provide some legitimate, non-discriminatory reason for the adverse employment decision. At this stage, the employer need only articulate such a reason; it bears no burden of persuasion. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255-256 (1981). After the employer articulates non-discriminatory reasons, the burden shifts back to the plaintiff. Burdine, 450 U.S. at 253 . At that point, the presumption of discrimination evaporates, St. Mary's Honor Center, 509 U.S. at 507; Udo, 54 F.3d at 12, and the plaintiff must prove that the reason given by the employer was a pretext and that the true reason was discrimination. Udo, 54 F. 3d at 13 (citation omitted).

To establish a prima facie case of discrimination in a non-selection case under the Rehabilitation Act, a plaintiff must prove that: (1) he is a member of a protected class, here, that he was disabled; (2) he applied for an open position, (3) he was not selected and (4) the employer hired another individual with similar qualifications who was not handicapped. Clifford v. Barnhart, 449 F.3d 276, 281 (1st Cir. 2006). Plaintiff can not

produce any evidence that, with respect to the May 2001 Housing Manager Assistant positions, he was treated differently than similarly situated individuals without disabilities because no one was hired. Those vacancy announcements were cancelled, and no one was hired to fill those positions. Since he cannot demonstrate that other similarly situated individuals who were not disabled were treated better than he was, his claims related to the cancelled vacancy announcements must fail.

In Webber v. International Paper Company, 417 F.3d 229 (1st Cir. 2005), plaintiff alleged discrimination based upon his disability.[11] He claimed that the reason offered for his dismissal – that he was part of a Reduction in Force (RIF) – was pretextual. The First Circuit affirmed the lower court's granting of defendant's motion for a judgment as a matter of law, because plaintiff had not demonstrated that others outside of his protected class were treated more favorably. Id. at 235-36. The issue in Webber was plaintiff's failure to show that those who were in fact treated more favorably were not disabled. Bradley, however, fails this burden for a more basic reason: he can not produce evidence that anyone (disabled or not) was treated more favorably than he was. The vacancy announcements were cancelled because of on-going studies aimed at privatizing the Navy's housing operations. Like everyone else who had applied for these positions, Bradley was informed in a meeting held shortly thereafter why these positions were cancelled. No one was ever hired to fill these two positions and the work is now performed by a private entity.

Plaintiff has no evidence that others were treated more favorably. Thus, as in Webber, plaintiff will be unable to satisfy the fourth element of his claim with respect to

[11] Webber is a case involving the Maine Human Rights Act (MHRA). The First Circuit has held that "the standards applicable to [the MHRA and the Rehabilitation Act] . . . [ are] essentially the same". Kvorjak v. State of Maine, 259 F.3d 48, 50 (1st Cir. 2001).

the May 2001 job announcements. As there is no factual dispute that Bradley was treated the same as every other applicant for the position, the Court should enter summary judgment for Defendant on plaintiff's claims arising out of the cancellation of the May 2001 Housing Manager Assistant positions.

### D. PLAINTIFF CANNOT DEMONSTRATE PRETEXT

Even if the Plaintiff could establish a prima facie case, which he cannot, summary judgment should enter for the defendant, because plaintiff cannot demonstrate that the legitimate reasons offered by the Navy are pretext and that the true reasons were discriminatory. Defendant has offered non-discriminatory reasons for cancelling the 2001 vacancy announcements and for detailing Ramsey into the position temporarily in 2002, rather than plaintiff. The May 2001 announcements were cancelled, based on "strong suggestions" from “higher echelon” headquarters staff that in order to avoid future Reductions in Force (RIFs), the vacant positions should not be filled. Indeed, Bradley was told that at the time and he has admitted that he does not have any evidence that these reasons were pretext. Bradley Depo (5/26/2006) at 128-29; A 40-41. Similarly, Ramsey was temporarily detailed to perform those duties in 2002, rather than Bradley, because Ramsey was already in the Housing Department. If Bradley had been temporarily detailed out of Public Works in 2002, the privatization study then on-going in Public Works might have concluded that Bradley’s vacated Public Works position did not need to be filled at all. If that happened, Public Works would lose the position previously occupied by Bradley.

It is now Bradley’s burden to demonstrate that 1) the non-discriminatory reasons offered by the Navy were pretext and 2) those false reasons were given to hide the true discriminatory intent. "It is not enough for a plaintiff merely to impugn the veracity of

the employer's justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: [handicap] discrimination.'" Mesnick v. Gen Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991). In the end, "the plaintiff's burden of producing evidence to rebut the employer's stated reason for its employment action 'merges with the ultimate burden of persuading the court that [plaintiff] has been the victim of intentional discrimination.'" Feliciano de la Cruz v. El Conquestador Resort and Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (quoting Burdine at 256). Plaintiff can produce neither evidence of pretext nor evidence that the pretext was offered to hide intentional discrimination.

Defendant did everything it reasonably could to accommodate Bradley given his claimed disability. Prior to the June 14, 2001, meeting about the privatization efforts, Captain Cooper directed the Housing Director to advertise the positions at the GS 7/9 level – a level at which Bradley would have been able to apply for the positions – discussed accommodating his inability to drive and advised that Bradley would be "afforded priority consideration" for one of the Housing Manager Assistant positions. Cooper Depo 34-36; A 57-59. These statements are not refuted by the Plaintiff, and demonstrate that but for the privatization studies, the positions would have been filled, and one of the positions would have been filled by Bradley.

Plaintiff's own testimony demonstrates that he cannot prove that the Navy's proffered reasons for these employment decisions were pretext. In his deposition Bradley admits that he believed the reasons given for cancelling the 2001 vacancy announcements were the truth and that he has no evidence that those reasons were pretext:

> Q: Did she [Cooper] tell you at this meeting that the cancellation of these jobs had nothing to do with you or your settlement?

A: That's correct.
Q: Okay. In fact, she told you that someone from higher up in the Navy, someone named Janet Huber or Hubner, had come down to Newport and advised them that the Navy was considering contracting out its housing, isn't that correct?
A: That's correct.
Q: Okay. And in fact, the Navy later did contract out housing, correct?
A: Only a year and a half ago.
Q: Okay. But they did?
A: Yes.
Q: Okay. Did you think she was lying when she said to you that Janet Hubner came down and that there was a study going on about reorganizing housing and doing it a different way?
A: No, I didn't.
Q: Okay. You thought it was the truth?
A: Yes.
Q: Okay. Do you think there were legitimate business reasons for what they were, for what Janet Hubner had suggested?
A: As I was told they were legitimate reasons.
Q: Do you have any reason -- do you have any evidence that they were not legitimate reasons?
A: No, I do not.

Bradley Depo (5/26/2006) 128-29; A 40-41. Since Bradley accepts that the reasons given were legitimate and since he has no evidence from which a fact-finder could find that these reasons were pretext to cover up a discriminatory motive, he cannot prevail.

With regard to both the cancellation of the 2001 vacancy announcements and the 2002 temporary detail of Ramsey to the Housing Management Assistant position, The Navy has offered non-discriminatory reasons for its actions. Bradley cannot provide evidence 1) that the decisions were pretext and 2) that the pretext was offered to hide discriminatory intent. See Webber at 235. Since Bradley cannot demonstrate "that the reason given is not only a sham, but a sham intended to cover up the employer's real motive," Mesnick, 950 F.2d at 824, he cannot prevail. Summary judgment should therefore be entered for the Defendant.

E. **PLAINTIFF CANNOT ESTABLISH THAT HE WAS THE VICTIM OF RETALIATION**

To make out a case of retaliation, ‘‘a plaintiff must establish that (1) [he] engaged in protected conduct; (2) [he] experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action.’’ Calero-Cerezo, 355 F.3d at 25; see also Weber v. Cranston Sch. Comm., 212 F.3d 41, 48 (1st Cir.2000) (holding that Rehabilitation Act prohibits retaliation). Plaintiff cannot establish a prima facie case of retaliation.

As to his non-selection for the 1999 vacancies, Bradley’s retaliation claim falls at the same hurdle as his discrimination claim: he did not contact an EEO counselor within 45 days of learning that he had not been selected for the jobs. Since he did not exhaust administrative remedies, he cannot prevail.

Bradley cannot make out a prima facie case for any of his claims of retaliation, because he cannot demonstrate a causal link between his EEO activity and the June 2001 cancellation of the vacancy announcements. "One way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action." Wyatt v. City of Boston, 35 F.3d 13, 16 (1st Cir.1994) (per curiam). The Supreme Court has stated

> The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be “very close.”

Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citation omitted). While the First Circuit has held that a one month period between the activity and the adverse action is short enough to generate an inference, Calero-Cerezo, 355 F.3d at 26, it has recognized that periods of three and four month are too long to establish a causal connection based on temporal proximity. Id, citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992).

The settlement of the EEO complaint, the last EEO activity Bradley engaged in prior to the cancellation of the job announcements, took place on January 24, 2001. Settlement Agreement. A 46-47. The cancellation of the job announcements occurred five months later on June 21, 2001, Cooper Depo at 81-82; A 67-68;Shannon Depo at 32; A 87. Since this is too long a time period to generate any inference of causation, Bradley cannot establish a prima facie case of retaliation.

Even if Bradley could establish a prima facie case of retaliation as to the cancellation of the 2001 vacancy announcements and the temporary detail of Ramsey to perform Housing Management Assistant duties in 2002, Bradley cannot prove that the legitimate reasons offered for those actions were a pretext for discrimination. Since the Navy has articulated legitimate reasons for its decisions, any inference of retaliation drops from the case and Bradley must prove causation by a preponderance of the evidence. Here, even the original inference that the Navy cancelled the 2001 vacancy announcements to retaliate against Bradley for pursuing his EEO rights is especially weak. On January 24, 2001, the Navy voluntarily settled Bradley's pending claim over the non-selection for the 1999 jobs, even though his claim was subject to dismissal for failure to contact an EEO counselor within 45 days. That settlement was penned five months prior to the allegedly retaliatory cancellation of the 2001 vacancy announcements. Why would the Navy have agreed to settle that thoroughly defensible claim if it harbored animus against Bradley for filing the claim? Given Bradley's failure to exhaust his administrative remedies over that claim, the Navy's January 2001 settlement of that claim is nothing short of a gift. It is inconceivable that the Navy would give Bradley such a gift in January 2001 and then retaliate against him for accepting that gift in June 2001.

Additionally, any claim of retaliatory animus is undercut by the Navy's efforts to grant Bradley's requests for accommodations. Webber, 417 F.3d at 239. Bradley admits that the Navy treated him fairly in modifying his job duties after his accident in 1988, Bradley Depo (5/26/06) at 38; A 18, and that Captain Cooper granted his accommodation request to move to another office shortly after June 2000. Bradley Depo (5/26/06) at 96-98; A 22-24.[12] Indeed, although Bradley had an EEO complaint pending at that time, Cooper did not ask Bradley to make any concessions in exchange for this accommodation. Bradley Depo (5/26/06) at 97-98; A 23-24. Bradley agreed that Captain Cooper viewed him as "an employee who has a problem, [and thought] let me get him into a better environment." Id. at 98. There is no basis for an inference that the Navy harbored a retaliatory animus towards Bradley when the job announcements were cancelled five months later in June 2001.

## IV. CONCLUSION

WHEREFORE, Defendant respectfully requests that the Court enter judgment in its favor.

Respectfully submitted,

GORDON R. ENGLAND, SECRETARY,
DEPARTMENT OF THE NAVY,

By his attorneys,

ROBERT CLARK CORRENTE
United States Attorney

---

[12] Bradley testified this accommodation occurred right after Cooper arrived at Newport. Bradley Depo (5/26/06) at 97; A 23. Captain Cooper began her Command at Naval Station Newport in June 2000. Cooper Depo at 6; A 53.

/s/ Anthony C. DiGioia
ANTHONY C. DIGIOIA, #2495
Assistant U.S. Attorney
Chief, Civil Division
United States Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
(401) 709-5000
(401) 709-5017 (Fax)
Email: anthony.digioia@usdoj.gov

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 11th day of September, 2006, I caused to be electronically filed the within Memorandum in Support of Defendant's Motion for Summary Judgment with the Clerk of the United States District Court for the District of Rhode Island, using the CM/ECF System. The following participant has received notice electronically:

Joseph F. Hook,Esq.,
294 Valley Road
Middletown, Rhode Island 02842

/s/ Anthony C. DiGioia
ANTHONY C. DIGIOIA, #2495
Assistant U.S. Attorney