IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ALAN BRADLEY, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | C.A. NO. 04-412ML |
| | ) | |
| GORDON R. ENGLAND, | ) | |
| Secretary of the U.S. | ) | |
| Department of the Navy, | ) | |
| Defendant | ) | |

DEFENDANT'S STATEMENT OF FACTS AS
TO WHICH THERE IS NO GENUINE DISPUTE

Unless a different time period is noted below, the following statements apply to all times relevant to the complaint.

Parties

1. Plaintiff, Alan Bradley ("Bradley"), alleges that he is an "individual with a disability", as defined by 29 USC §706(8). Second Amended Comp. ¶2.

2. He claims his disabilities include epilepsy, a lazy eye, and a deformed shoulder. Second Amended Comp. ¶9; Bradley Depo (5/30/06) at 39-40,[1] Summary Judgment Appendix at A 5-6.[2]

3. Defendant, Gordon R. England, is the Secretary of the Navy. Second Amended Comp. ¶3.

---

[1] Bradley's deposition extended over four different dates. It will be cited herein as Bradley Depo (Date).

[2] For ease of reference, the documents cited herein are reproduced in the Appendix to the Statement of Material Facts, attached hereto. Each page of the Appendix is separately numbered as "A-__," and we will cite to specific documents by name or description and by reference to the Appendix page number.

4. In his complaint, Bradley alleges that the Navy discriminated against him based on his disability in three separate employment decisions. The first decision involved two Housing Manager Assistant positions for which he was not selected in September of 1999. Second Amended Comp. ¶¶ 9, 26, and 27. The second decision involved a vacancy announcement for two Housing Manager Assistant positions that were announced in May of 2001 but were subsequently cancelled and never filled. Second Amended Comp. ¶¶ 12, 29, and 30. The third decision involved the temporary detail of Victor Ramsey to a Housing Manager Assistant position in May of 2002. Second Amended Comp. ¶¶ 14, 32, and 33.

5. Plaintiff began working for the United States Navy in May of 1985. Bradley Depo (5/26/06) at 11; A 7.

6. In 1988, Bradley was a Housing Management Assistant with the Navy. Bradley Depo (5/26/06) at 26; A 8. His duties required him to drive to different housing units to inspect the properties. Bradley Depo (5/26/06) at 28-29; A 9-10.

7. While driving a government vehicle between housing units in 1988, he was involved in a car accident. Bradley Depo (5/26/06) at 30-31; A 11-12. Following that accident, which Bradley reported was the result of an epileptic seizure, Bradley Depo (5/26/06) at 35; A 16, it was agreed that Bradley would no longer drive a car as part of his job responsibilities. Bradley Depo (5/26/06) at 37-38; A 17-18.

8. Bradley's job duties were modified so that the bulk of his duties could be performed in the office. Bradley Depo (5/26/06) at 31-34; A 12-15. When Bradley needed to go to a different location, another employee or a contractor's employee would drive him. Bradley Depo (5/26/06) at 31; A 12.

9. Bradley never complained about this modification of his duties; he was relieved that he would no longer have to drive on the job, because he believed it was not safe for him to drive. Bradley Depo (5/26/06) at 37-38; A 17-18. He thought the Navy treated him fairly in making these accommodations. Bradley Depo (5/26/06) at 38; A 18.

10. In June of 1999, the Navy advertised two GS-7 Housing Management Assistant positions. Bradley Depo (5/26/06) at 105; A 27. Bradley applied for these positions but was not selected. Bradley Depo (5/26/06) 105-06; A 27-28. The positions were awarded to two other employees: Jamie Theibault and Mary Beth Oliveira. Bradley Depo (5/26/06) at 107; A 29.

11. Bradley learned that he was not selected by a letter dated September 29, 1999, which he received in early October 1999. Bradley (5/26/06) at 107, 115; A 29, A 30.

12. Bradley believed that the Navy was discriminating against him by not selecting him for the jobs. He chose not to contact an EEO counselor, because he believed other similar positions were likely to become available soon. Bradley Depo (5/26/06) at 115-16; A 30- 31. Additionally, he was on paternity leave and was more interested in caring for his children than pursuing his EEO claims. Bradley Depo (5/26/06) at 119-20; A 33-34.

13. In December of 1999 Bradley learned that the existing Housing Management Assistant jobs were being reclassified from GS-7 to GS-9 positions. Bradley Depo (5/26/06) at 116; A 31. The reclassification effectively barred Bradley from applying for future Housing Management Assistant vacancies, because, as a GS-6 employee, he was not eligible to apply for a GS-9 position. Bradley Depo (5/26/06) at 99-100; A 25-26.

14. Bradley does not claim the Housing Management Assistant positions were reclassified to the GS-9 level in an attempt to discriminate against him. Bradley Depo (5/26/06) at 119; A 33.

15. Bradley knew that the reclassification of these positions would prevent him from applying for future Housing Management Assistant positions. Bradley still did not contact an EEO counselor about his non-selection. Bradley Depo (5/26/06) at 117; A 32.

16. Bradley was familiar with the employment discrimination complaint process before October 1999. Bradley Depo (5/26/06) at 38-39; A 18-19. He knew that any complaint of discrimination had to be initiated by contacting an EEO counselor within (at most) 45 days of the act of discrimination. Bradley Depo (5/26/06) at 40-41; A 20-21.

17. Bradley did not contact an EEO counselor until March 25, 2000, almost 180 days after he was advised that he was not selected for the jobs. Bradley Depo (5/26/06) at 115-117; A 30-32.

18. He subsequently filed a formal EEO complaint regarding his non-selection.

19. Bradley and the Navy settled his complaint regarding his non-selection for the 1999 jobs in a Settlement Agreement signed January 24, 2001. Appendix at A 46-47. In the settlement, Bradley agreed to withdraw his complaint of discrimination and the Navy agreed to announce new Housing Management Assistant positions in Newport at both the GS-7 and GS-9 levels, for a period of two years. Id. The Navy also agreed to give Bradley priority consideration for those positions. Id.

20. Bradley's claim regarding his non-selection for the 1999 positions is before the Court, notwithstanding the Settlement Agreement, because the claim was reinstated by the EEOC. Bradley v. England, Decision Reinstating Complaint EEOC OFO December 21, 2004; Appendix at A 48-52. The EEOC Office of Federal Operations held that "upon cancellation of the vacancy announcement and the likelihood that such positions would be "contracted out," the agency effectively abolished its ability to give complainant priority consideration for a position

in

Housing, thus rendering the agency unable to provide complainant the promised consideration in exchange for the withdrawal of his complaint." Bradley v. England, Decision Reinstating Complaint EEOC OFO December 21, 2004; Appendix at A 48-52. The Commission found the Settlement Agreement to be void for lack of consideration, and reinstated the complaint "at the point at which processing ceased." Id.

21. In May of 2001, two Housing Management Assistant positions were advertised at the GS-7 and GS-9 levels. Bradley Depo (5/26/06) at 121,123; A 35, A 36 and Depo Exhibit 6; A 43-45. Bradley applied for the positions. Bradley Depo (5/26/06) at 123; A 36.

22. Captain Ruth Cooper (Cooper), then commanding officer at Naval Station Newport, told the Director of Housing that Bradley would receive priority consideration for one of the jobs. Cooper Depo at 35; A 58 . Because Bradley was a likely candidate to fill one of the Housing Manager Assistant vacancies, Cooper discussed with the Housing Director and other employees ways to accommodate Bradley's inability to drive a motor vehicle. Cooper Depo at 35-37; A 58-60; Deposition of Karen Peckham at 12; A 69.

23. On June 14, 2001, there was a meeting at Newport between Captain Cooper, Alan Shannon, and Jana Hubner, among others. Hubner was with the Office of Navy Housing at Naval Facilities Atlantic. In that position, she "oversaw Navy housing operations across 50 naval installations in the Eastern United States, Caribbean, Mediterranean, [and] Europe," including Newport. Deposition of Jana Hubner at 4; A 70.

24. This meeting included a discussion of upcoming changes to the operations of Navy Housing at Newport. The discussions included a Navy-wide Functionality Assessment (FA) of

housing operations, [3] a Navy-wide Commercial Activity (CA) or A76 study,[4] and a Public Private

Venture (PPV).[5] There was also a discussion about extending a "Pilot Project" of private housing management, which was ongoing in New Hampshire, into Newport.[6]

25. All of these programs involved some form of privatization of the operation of Navy housing in Newport. Hubner Depo at 22-23; A 74-75; 30; A 77; 32; A78; Shannon Depo at 11-12; A 80-81. Implementation of any one of these programs would have resulted in a smaller civilian-employee housing staff in Newport. Hubner Depo at 23; A 75; 30; A 77; 40; A 79; Shannon Depo at 12; A 81; 31; A 86.

26. Hubner advised that instead of filling vacant positions in Housing with civilian employees, Newport should try to fill the positions with contract employees. Hubner Depo at 27; A 76. Using contract employees as "a tool that was being used in regards to privatization. The goal was that we wanted to minimize impact to the staff as Navy housing transitioned from government-owned and operated to privatized." Hubner Depo at 27; A 76. Cooper, who viewed Hubner as "a higher echelon headquarters member staff," understood Hubner to be making a "strongly recommended and strongly encouraged statement," "that [she] listened to." Cooper Depo at 79-80; A 65-66.

27. Cooper and Shannon discussed Hubner's recommendations, and the advertisements were cancelled on June 21, 2001, one week after the meeting with Jana Hubner. Cooper Depo at 81-

---

3 Cooper Depo at 26-27; A 54-55; Shannon Depo at 11-12; A 80-81.
4 Shannon Depo at 11-12; A 80-81.
5 Shannon Depo at 11-12; A 80-81.
6 Hubner Depo at 8 and 10; A 71-72; Shannon Depo At 13-15; A82-84.

82; A 67-68; Shannon Depo at 32; A 87.

28. On approximately July 12, 2001 Cooper met with the employees who had applied for the cancelled Housing Manager Assistant positions. Bradley Depo (5/26/06) 123-25; A36-38. Cooper explained that the Housing Department was coming under study to either go into privatization or some other reorganization, and that as a result, a decision had been made not to fill the positions. Bradley Depo (5/26/06) 125; A38.

29. Later, Cooper and Bradley met and discussed the cancellations again. Bradley Depo (5/26/06) 128-29; A 40-41. Cooper explained that Hubner had advised her that the Navy was considering contracting out its housing, and that this was the basis for the decision to cancel the announcements. Bradley Depo (5/26/06) 127-129; A 39-41.

30. Bradley believed that Cooper was telling him the truth. Bradley Depo (5/26/06) 129; A 41. He did not believe that the reasons were "trumped up" to discriminate against him, and believes that the reasons given were legitimate business reasons for the actions taken. Bradley admits that he has no evidence that this explanation was false. Id.

31. Captain Cooper offered to extend Bradley's Settlement Agreement for two more years. Bradley Depo 130; A 42. Bradley refused the offer. Bradley Depo 130; A 42.

32. Less than one year later, a formal Navy-wide hiring freeze was put into place for Housing positions like the ones that had been cancelled. Cooper Depo 78; A 64; Shannon Depo at 34; A 88.

33. Approximately one month later in May of 2002, Mr. Victor Ramsey ("Ramsey") was detailed to fill a vacant Housing Manager Assistant position for six months. Bradley Depo (5/30/2006) at 22; A 1; 26; A 4.

34. Captain Cooper considered temporarily detailing Bradley to that position, but decided not to, because Bradley was then an employee in the Public Works Department. Cooper Depo 61; A61. Public Works was itself undergoing an A76 study of privatization. Cooper Depo 61; A 61. Cooper feared that, if Bradley were transferred out of Public Works in order to take a temporary position with housing, his public works position could be viewed as unnecessary, since the Department was functioning without someone doing that work, anyway. If that was the conclusion, Bradley's position in Public Works could be permanently eliminated. Cooper Depo 61-63; A 61-63. As a result, at the end of the temporary detail, Bradley could be left without any job to return to. Cooper told Bradley that this is why she did not place him in that position temporarily. Bradley Depo (5/30/2006) at 23-24; A 2-3.

35. Leaving Bradley's Public Works position vacant during the privatization study could also have had adverse consequences for the Public Works Department. Cooper Depo at 63; A 63. If the Study concluded that there was no need for someone to do Bradley's job, Public Works could lose the man-hours associated with that position, depriving them of a replacement employee for Bradley. Cooper Depo at 62-63; A 62-63. Cooper decided that this scenario was neither in the best interest of Bradley nor of the Navy, since it did not guarantee Bradley a position at all in six months and could cause the Public Works Department to lose a slot for an employee to perform those duties. Cooper Depo at 63; A 63.

36. Ramsey's detail to the Housing Manager Assistant lasted for approximately 180 days and he was then transferred back to his old position within the Housing Department. Bradley Depo (5/30/2006) at 22; A 1; 26; A 4.

37. The Navy subsequently entered into a Public Private Venture to provide housing in

Newport. Shannon Depo at 22; A 85; Bradley Depo (5/26/2006) at 128-29; A 40-41; Hubner Depo at 21; A 73. The housing units which were formerly owned and maintained by the Navy have been transferred to a private corporation under a long term lease. As a result of the PPV, there are now fewer employees in the Housing Department in Newport. Hubner Depo at 23; A 75.

Respectfully submitted,

GORDON R. ENGLAND, SECRETARY,
DEPARTMENT OF THE NAVY,
By his attorney,

ROBERT C. CORRENTE
United States Attorney

/s/ Anthony C. DiGioia
Anthony C. DiGioia (RI # 2495)
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Fleet Center
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
*Email: anthony.digioia@usdoj.gov*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the day of September, 2006, I caused to be electronically filed the within Defendant's Statement of Facts as to Which There is No Genuine Dispute with the Clerk of the United States District Court for the District of Rhode Island, using the CM/ECF System. The following participant has received notice electronically:

Joseph F. Hook,Esq.,
294 Valley Road
Middletown, Rhode Island 02842

/s/ Anthony C. DiGioia
ANTHONY C. DIGIOIA, #2495
Assistant U.S. Attorney