UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ALAN BRADLEY | : | |
| Plaintiff | : | |
| | : | |
| | : | |
| | : | CA 04-412ML |
| | : | |
| | : | |
| GORDON R. ENGLAND | : | |
| Secretary of the US Navy | : | |
| Defendant | : | |

PLAINTIFF'S STATEMENT OF FACTS AND DISPUTED FACTS

**I. Facts**.

1. Alan Bradley has been employed by the Defendant since 1985. He has an BS in architectural engineering degree from Roger Williams University and received that degree in 1983. Alan Bradley also has a partially paralyzed right arm and epilepsy, a seizure disorder.

Bradley Affidavit.

2. In the late 1980s he was employed as an assistant Housing Manager at the GS-5 level. Corey Depo. Page 5 lines 19-21. In the late 1980s he was involved in a motor vehicle accident on the base as a consequence of having an epileptic seizure. Corey Depo. Page 7 lines 2-3. Following this accident, Robert Corey who was the then Director of the Housing Department prohibited Alan Bradley from operating a motor vehicle on base because of safety concerns that he could have another accident as a result of an epileptic seizure. Charles Silvia who also worked in housing department as a Housing Manager at that time was aware that Alan Bradley was not driving because of his epilepsy. Corey deposition. Silvia Deposition.

3. The Plaintiff continued to hold a drivers license but did not drive on base because of the danger that he could have a seizure while driving. Bradley Affidavit. Corey Depo page 6 line 14, and page 7 line 20-23. Corey Depo. Page 9.

4. Mr. Bradley held the GS-5 Assistant Housing Manager career ladder position until the mid 1990s, at which time his position was abolished. Corey Deposition page 8 line 3. Mr. Bradley was changed from his position as a GS 5 Assistant Housing Manager and placed into the position of a Supply Technician, by the then Housing Director Robert Corey. Robert Corey created the position of Supply Technician for Alan Bradley to accommodate for his physical limitations. Corey Depo page 10 lines 23 and 24. Alan Bradley filed an EEOC complaint at that time as a consequence of this action. This complaint was settled and his position of supply technician was upgraded to that of a GS 6 level. Silvia Depo.

5. Thereafter, in the summer of 1999, the Plaintiff applied for two vacant housing manager assistant positions at the GS 7- level in the 1173 series. See Corey deposition page 30 lines 8-20 and exhibit 6 to Corey Depo. He was rated as qualified for the positions, along with Mary Beth Oliviera and Jamie Thiebault. Corey Depo page 24 lines 2-3. However, Alan Bradley was not selected for the jobs. Robert Corey instead selected Mary Beth Oliviera and Jamie Thiebault. Corey Depo page 20 and 21. Mr. Corey testified that Alan Bradley could not fill the position Housing Manager at the GS-7 level positions because he could not drive. Corey deposition Page 61-63 [1].

---

[1]However Mr. Corey testified that the positions that were filled by Mary Beth Oliviera were not GS 7 Housing Manager positions but were in fact Housing assignment positions. Corey depo at page 24 lines 6-11. In Defendant's answers to interrogatories number 9 (and 13 by

6. Mr. Bradley received notice of his non selection by way of a letter dated September 29, 1999, which he received in early October 2001. In March of 2000, the Plaintiff's job as a Supply Technician was transferred out of Housing Department and moved to the Public Works department Bradley Affidavit. . Following this move, Mr. Bradley on March 25, 2000, contacted a EEOC counselor, and alleged that he was not provided a reasonable accommodation in that the environment in which he was placed in at Public Works and that the environment was more likely to cause ecliptic seizures. In addition, Mr. Bradley alleged that the selection of Mary Beth Oliviera and Jamie Thiebault over him was based upon his disabilities. This was EEOC Activity Number 00-32411-003.

7. During the processing of this EEOC complaint, Captain Ruth Cooper of the Navy worked with the Plaintiff to provide him an office setting in the Public Works Department to work out of that would accommodate his disabilities of epilepsy and partial paralysis of his right arm. See Cooper dep. Page 21 line 8-20; also Evans depo page 9 lines 19-25 and page 10 line 1. Additionally, a settlement agreement was reached on January 24, 2001, between the Plaintiff and the Defendant resolving Mr. Bradley's complaint in EEOC Activity Number 00-32411-003. This settlement agreement was memorialized in writing, and agreement was executed by the Plaintiff and Captain Ruth Cooper on behalf of the Defendant. Pursuant to the terms of this

---

reference) the Defendant stated that "the GS 7 Housing Management Assistant position at Naval Station Newport (for which plaintiff applied in 1999) required the employee to required to drive a vehicle to perform the necessary duties such as contacting property owners, real estate brokers and development housing authorities, and inspect housing units. Plaintiff had been in an on the job accident and requested not to drive, stating '. . . should I have a seizure, I could get in an accident and injure myself or someone else. . . . .In addition plaintiff had difficult communicating with others.'"

agreement, the Defendant agreed to "(a) announce Housing Management Specialists positions GS 1173-9, at both the GS 7 and GS 9 level, and (b) afford the [plaintiff] priority consideration for such positions." Captain Cooper understood priority consideration to mean that "as long as the person that had priority consideration was qualified for that position that the person would be the first selected for the position. Cooper Depo page 23 lines 10-12.

8. In the Spring of 2001, two Housing Manager Assistant positions did in fact become vacant because of retirements. Charles Silvia who was recently selected as the Housing Director[2] in the 1173 series requested that advertisements go out to fill the positions. Cooper depo at page 24 lines 11-12 and page 34. Because of the settlement that had been reached with the Plaintiff in EEOC Activity No. 00-32411-003, Captain Cooper advised Charles Silvia that the advertisements had to go out at the GS 7 and GS 9 level. Cooper depo page 34, 21-22 and 35 page 1-5. Captain Cooper discussed with Charles Silvia the settlement agreement reached with the Plaintiff, including advising him that Mr. Bradley was to be afforded priority consideration for the positions and ways to accommodate his disabilities so that he could fill the vacant Housing Manager positions not withstanding his disability of epilepsy and inability to drive. Cooper depo page 35 lines 10-15; Cooper affidavit page 148 of EEOC Investigation. According to Captain Cooper, Charles Silvia was the most likely person to advise her that Alan Bradley had a problem with driving a motor vehicle. Cooper depo page 36 line 18-19. Cooper page 36 line 20-22, and page 37 line 1. This caused her to start thinking about ways to accommodate Alan Bradley's driving issue so he could work a housing manager. Charles Silvia expressed his feeling to Captain Cooper that he did not want to hire Alan Bradley as a housing manager. See Cooper depo at page 66 lines 8-22 and page 67 line1

---

[2]Charles Silvia became the housing director in April 2001.

9. Prior to filling the housing manager vacancies, Alan Bradley's name had come back as from human resources in Groton as a referral for selection. Evans Depo. Page 1- lines 21-24; page 11 line 3-4. Captain Cooper told Richard Evans, the Plaintiff's then supervisor that: "looks like I'll be able to put Alan in one of those positions . . . I have three positions. He's a qualified candidate and we can reasonable put him in the job with no problem." Evans Depo. At page 11 lines 14-21.

10. On June 14, 2001 there was a meeting on the Naval Base in Newport with Jana Hubner, Captain Ruth Cooper and Charles Silvia and possible Alan Shannon. The accounts provided by the management officials of the Navy regarding what was discussed at the June 14, 2001 meeting with Jana Hubner vary and conflict with each other. Jana Hubner said she spoke about a pilot program that would consider contracting out the housing department. In addition she discussed the impact that this pilot program would have on the housing staff. According to Jana Hubner she recommended to Charles Silvia and Captain Cooper that all of the Housing positions in the 1173 series not be filled because of the housing manager pilot program only. Hubner Depo. Page 10 lines 9-10.

11. Captain Ruth Cooper said that she was advised by Jana Hubner to not to fill the vacant positions because a Functionality Assessment (FA) study. Cooper Depo at page 26 line 4-22. Captain Cooper was clear that a Commercial Activities was not discussed. Cooper Depo at page 30 line 22.

12. Alan Shannon said that he was advised at the meeting with Jana Hubner not to fill the

vacancies because of a the discussion about a Commercial Activities (CA) study, or an Functionality Assessment (FA) or a Public Private Venture (PPV). He said that the conversation about the pilot program were general in nature only. Shannon Depo at page 13 line12-24 and page 14 line 1-2.

13. Charles Silvia cited a property management study as the reason that the housing manager positions were not filled in the summer of 2001. Page 61 line 1-5. He said that after the meeting with Jana Hubner he and Captain Cooper were under the impression that they had no choice but to go under property management. He said "it wasn't' until later that they found out that they did have a choice, and that when everything started changing. What we were told to the best of my recollection, what we were told is either go into the property management study or the funds would not be available the following year to pay our management people. . . . So we just assumed that we had to go into the property management study . . . . but when we found out that wasn't the case , that's when we decided we weren't going to participate. Silvia at page 61 lines 6-23. Charles Silvia was asked why he did not fill the GS 7/9 Housing Manager position either permanently or temporarily. Mr. Silvia said "I was very uncomfortable with the decision I was forced to make. I felt an obligation to the people who worked for me to try to protect their positions. However, I also wanted to fill the Housing manager positions with civil service employees. I felt it was a loose/loose situation. Our concern about hiring an employee temporarily was that someone coming into the organization that has prior military or any other benefits might wipe someone out who had been with the organization for 20-30 years, if we had to do away with personnel. I don't think we had the option of filling the position temporarily." Silvia affidavit at page 157 and 158.

12. Captain Cooper, Alan Shannon, and Charles Silvia each said the decision not to fill the vacant Housing Manager Assistant positions was theirs. See EEOC affidavits attached to the depositions of Cooper; Shannon; and Silvia.

13. By August 15, 2001, the Defendant had decided that it would not participate in the pilot program that was referred to by Jana Hubner at the June 14, 2001 meeting. Shannon Depo at page 22 lines 20-24, page 23 line 1 (also exhibit 3 to Shannon Depo)

14. On June 21, 2001 Charles Silvia advised Karen Peckham to cancel the recruitments for the two vacant housing manager positions that Alan Bradley had applied. Silvia EEOC affidavit attached to deposition.

15. Alan Shannon testified that after the June 14, 2001 meeting that they cancelled all of the GS -1173 positions. Shannon depo at page 11 lines 1-3.

16. However, contrary to the testimony of Alan Shannon, the Defendant proceeded to fill a Housing Manager Supervisor position in the 1173 series.[3] Silvia depo at page 39-42 and Exhibit 4 attached thereto. This Housing Manager Supervisor position was filled by a Mr. William Murphy after going through a competitive application process and interviewing with Captain

---

[3]Charles Silvia sent a memorandum for the week end June 15, 2001 advising that the Navy was preparing the necessary paperwork to contract 3 temporary housing manager Assistants and a referral clerk to fill the vacant positions created from the retirements. He also noted in that same memo that HRO Philadelphia was currently qualifying and rating 17 applicants for the vacant GS-11 Housing Manager Supervisor position. This GS-1173 position was ultimately filled by William Murphy after undergoing a competitive application process.

Cooper or Charles Silvia. Silvia depo page 42 line 14. Murphy depo page 4.

17. On July 12, 2001, Captain Cooper met with the applicants for the GS 7/9 Housing Manager positions, including Alan Bradley, to advise them that the positions were going out to contract. At this meeting Alan Bradley spoke to Captain Cooper about the settlement agreement that he had made with her concerning affording him priority consideration for the vacant Housing Management Positions. After this meeting, the Plaintiff made allegations that Captain Cooper cancelled the recruitment to get out of his settlement. Cooper affidavit at page 149. At this meeting Captain Cooper advised Alan Bradley that she was still thinking about placing Alan Bradley in housing. Bradley EEOC affidavit at page 112.

18. The next day on July 13, 2001, Captain Cooper told James Alan, the union representative that because Alan Bradley did not have a drivers license he could not fill the Housing Manager Assistant position. Alan Deposition page 9 lines 1-9.

19. On July 23, 2001, Captain Cooper again met with Alan Bradley and James Alan. At this meeting Captain Cooper told Alan Bradley that there was a possibility of a Reduction in Force and that if the plaintiff were placed in housing that he could loose his job as a consequence of the reduction in force.[4] Alan Bradley advised Captain Cooper that he nevertheless wanted the

---

[4]Later in her deposition testimony, Captain Cooper said she did not fill the position temporarily because if she transferred Alan Bradley even temporarily to the housing manager position, that would leave the supply tech position Alan Bradley held vacant, and could cause the Public Works department to loose its billet for that supply tech position because the Public Works Department was also undergoing a Functionaility Assessment study. However, this reason is suspect because there was no reason offered as to why it would have been necessary to leave the Supply Tech position vacant if Alan left that position.

Assistant Housing Manager position and was willing to take the risk of losing his job in a future reduction in force.

20. On September 21, 2001, the Plaintiff filed a formal complaint with the EEOC DON 01-32411-003. In this complaint he alleged that the Defendant breached the terms of the January 24, 2001 settlement agreement inasmuch as it failed to afford him priority consideration for the vacant housing manager positions, and that the failure to fill the positions with permanent government employees, was a result of discrimination based upon his disabilities of epilepsy and right arm paralysis. In addition he alleged that the failure to fill the positions was reprisal for his prior EEOC activity.

21. As a consequence of the Functionality Assessment in Housing that had commenced in March 2001, hiring controls were placed on all GS 1173 staff positions in housing effective April 2002. Hubner depo. Page 16- line 20. However, no one at the meeting with Jana Hubner on June 14, 2001 had any idea of the impact of the Functionality Assessment. Hubner page 10 line 11-20. Hubner page 16 line 13-14.

22. In May of 2002 an additional Housing Manager Assistant became vacant because a Laurie Bowers, who held a Housing Manager Assistant position took another job elsewhere with the Navy. Instead of immediately advertising this open position, The Housing Director Charles Silvia detailed a Mr. Victor Ramsey to this position for a 180 period. Exhibit 6 attached to Silvia deposition.

23. When Mr. Bradley learned of the placement of Victor Ramsey into the position of Green Lane Housing Manager he had his attorney contact Captain Ruth Cooper to advise her in writing that the terms of his settlement agreement were breached because he was not afforded priority consideration for the position in which Mr. Ramsey was detailed. Cooper Depo. Page 43 and exhibit 5 attached thereto. Captain Cooper responded to Mr. Bradley's claim that the settlement had been breached by the placement of Victor Ramsey by referring back to a meeting that she had with Alan Bradley and the union representative in the summer of 2001. In this letter she said that during her meeting with the Plaintiff and the union representative she "offered to extend the settlement agreement two more years since the department required a hiring freeze on all GS 1173 series positions while a functionality assessment was being completed, and you refused that offer." Cooper depo. Exhibit 4.

24. Then, after the personnel office received a request from Charles Silvia to fill the vacancy for the Housing Manager Assistant position vacated by Laurie Bowers, the position was posted and advertised on November 20, 2002. Silvia pages 55-56. The Plaintiff applied for the position. The recruitment was then cancelled the day after the Plaintiff applied for the position on November 21, 2002. Affidavit of Alan Bradley.

25. Between the time that the 2001 recruitments were cancelled, and the November 2002 position was cancelled, there was a need for a Housing Manger Assistant to be filled on a permanent basis. Murphy depo at page 22 lines 8-10. Because of the need for a permanent employee to fill the position, Mr. Murphy who was then a Housing Manager Supervisor inquired of Charles Silvia as to why Victor Ramsey could not keep the appointment, and Mr. Silvia said:

"Alan was complaining about the appointment." Murphy depo at page 25 line 4-5. Mr. Murphy asked Mr. Silvia to hire Alan. Murphy depo at page 25 line 9-11. Mr. Silvia replied in the negative stating to Mr. Murphy: "No Alan is not coming to this organization" and "we do not want Alan in the organization." Murphy depo page 25 line24 page 26 line 26.

26. Victor Ramsey who held the housing Manger Assistant position for on a temporary detail, provided an affidavit in this case. In his affidavit he said " While I held the position as the Green Lane Housing Manager in the year 2002, I spoke to Charles Silvia about making my position permanent as the Green Lane Housing Manager. At that time, Charles Silvia told me that Alan Bradley had filed a complaint, and that because of that complaint, that he would have to hire Alan Bradley before he could make my promotion permanent. He told me that this was not going to happen, and that 'Alan would not be given a position in the Housing Department while he was there.' He further said that 'Alan was not coming into the Housing Department and that I could thank Alan for not getting a permanent promotion.'" Ramsey affidavit paragraph 4.

27. In 2004, Alan Bradley's Supply Technician position in Public Works was abolished and he received a notice to change his assignment from a GS 6 Supply Technician in Public Works and was downgraded to a position of ("Wage Grade-5") WG 5 dispatcher. The Navy informed the Plaintiff that he was downgraded pursuant to a Reduction and Force (RIFF). Bradley Affidavit.

**II. Disputed Facts.**

1. Was the Plaintiff's disabilities of epilepsy or partial paralysis in his right arm "a motivating factor" in the decision by the Defendant not to fill the two vacant assistant housing manager positions in the Spring and summer of 2001?

2. Was the Plaintiff's disabilities of epilepsy or partial paralysis in his right arm "a motivating factor" in the decision by the Defendant to fill the vacant Housing manager position that was vacated by Laurie Bowers in the spring or summer of 2002, with a temporary detail of Victor Ramsey, rather than advertising and filling the position with a permanent hire?

3. Was the Plaintiff's disabilities of epilepsy or partial paralysis in his right arm "a motivating factor" in the decision not to fill the housing manager permanently, that was vacated by Laurie Bowers in 2002?

4. Are the multiple and varied reasons offered by the Defendant for cancelling the vacant Housing manager positions in the spring or summer of 2001, rather than affording the Plaintiff priority consideration for said positions a pretext for discrimination based upon the Plaintiff's disabilities of epilepsy and partial right arm paralysis?

5. Are the reasons offered by the Defendant for temporarily detailing Victor Ramsey to the housing manager position that vacated by Laurie Bowers in the spring summer of 2002, and failing to afford Alan Bradley priority consideration to fill said position permanently a pretext for discrimination based upon the Plaintiff's disabilities of epilepsy and partial right arm paralysis?

6. Was the fact that the Plaintiff's engaged in prior protected EEOC Activity "a motivating factor" in the decision by the Defendant not to fill the two vacant assistant housing manager positions in the Spring and summer of 2001?.

7. Was the fact that the Plaintiff engaged in prior EEOC activity "a motivating factor" in the decision by the Defendant to fill the vacant Housing manager position that was vacated by Laurie Bowers in the spring or summer of 2002, with a temporary detail of Victor Ramsey, rather than advertising and filling the position with a permanent hire?

9. Was the Plaintiff's fact that the Plaintiff engaged in prior EEOC activity "a motivating factor" in the decision not to fill the housing manager that was vacated by Laurie Bowers in 2002?

10. Are the multiple and varied reasons offered by the Defendant for cancelling the vacant Housing manager positions in the spring or summer of 2001, rather than affording the Plaintiff priority consideration for said positions a pretext for discrimination based upon the prior protected activity?

11. Are the reasons offered by the Defendant for temporarily detailing Victor Ramsey to the housing manager position that vacated by Laurie Bowers in the spring summer of 2002, and failing to afford Alan Bradley priority consideration to fill said position permanently a pretext for discrimination based upon the for discrimination based upon the prior protected activity?

12. Was William Murphy a similarly situated non disabled person who was treated more favorably than the Plaintiff when he was promoted/hired to the GS 1173 series position of Housing Manager Supervisor in the summer of 2001?

13. Was Victor Ramsey a similarly situated non disabled person who was treated more favorably than the Plaintiff when he was detailed to the position of Green Lane Housing Manager in the spring/summer of 2002?

PLAINTIFF
Alan Bradley
By his Attorney

/s/ Joseph F. Hook

____________________________

Joseph F. Hook, RI Bar No 5418
294 Valley Road
Middletown, RI 02842
(401) 846-5200
Fax (401) 848-0984

CERTIFICATE OF SERVICE

I the undersigned certify that on this 11th of October , I e-mailed true copy of the within memorandum of law to Anthony DiGioia, Esq, Assistant US Attorney at anthony.digio@usdoj.gov.

/s/ Joseph F. Hook