IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ALAN BRADLEY, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | C.A. NO. 04-412ML |
| | ) | |
| GORDON R. ENGLAND, | ) | |
| Secretary of the U.S. | ) | |
| Department of the Navy, | ) | |
| Defendant | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OBJECTION TO MOTION FOR SUMMARY JUDGEMENT**

Although Plaintiff has objected to the Motion for Summary Judgment on several grounds, he admits that the claims regarding his non-selection for the 1999 positions are time-barred and cannot be brought before this Court. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum") at 3. The Court should therefore enter partial summary judgment on those claims.[1] Since all of Plaintiff's objections are either insufficient, unsupported, or contrary to law, Defendant's Motion for Summary Judgment should be granted.

I. Plaintiff Has Failed to Establish a Prima Facie Case for Failure to Hire or Promote Him When the 2001 Vacancy Announcements Were Cancelled or When the Decision Was Made Not to Permanently Fill the 2002 Vacancy.

In the Motion for Summary Judgment, Defendant argued that Plaintiff could not establish a prima facie case on the claims related to the vacancy announcements, because the announcements were cancelled and no one was hired to fill the positions. Memorandum in

[1] Plaintiff suggests that evidence regarding the 1999 events is nonetheless admissible at trial. That question should only be resolved if there is a trial and when the issue arises.

Support of Defendant's Motion for Summary Judgment ("Defendant's Memorandum") at 12-14. In his opposition, Plaintiff contends that he should not be strictly held to the elements the courts have limned for a failure to hire or failure to promote case. Plaintiff's Memorandum at 15-18.[2] He seems to suggest that if the position he applied for was left unfilled or if anyone was hired to fill any position in Housing, even if not the one plaintiff applied for, he will have satisfied his burden. Plaintiff's argument makes no sense and is directly contrary to the case law.

Citing Patterson v. McLean Credit Union, 491 U.S. 164, 186-87 (1989), Plaintiff contends that a prima facie case of failure to hire or failure to promote is established by proof that he "was qualified for the position, applied for the position, did not get the position, and that the position remained open or was filled by someone outside the plaintiff's protected class...." Plaintiff's Memorandum at 16. He argues that the vacancy announcements remained open because the "Defendant chose not to fill them with permanent employees." Id. at 17. Plaintiff has misstated the holding of Patterson, and ignored a long line of cases to the contrary.

In Patterson, the Supreme Court did not hold that proof that the employer left a position unfilled was sufficient to establish the fourth element of the prima facie case. Indeed, the Court specifically held that in discrimination cases alleging a failure to hire, the plaintiff must prove that the employer either continued to seek applicants or hired someone outside the protected class.

[P]etitioner [must] prove by a preponderance of the evidence that she applied for

---

[2] Plaintiff is correct in asserting that the elements of the prima facie case are not the same in all types of employment discrimination cases. That principle means that the elements of a discharge case may be different from the elements of a failure to hire case. See Jones v. School District of Philadelphia, 198 F.3d 403, 411 (3d Cir. 2005). It does not mean that the elements of a prima facie case in a failure to hire case may be modified at will.

> and was qualified for an available position, that she was rejected, and that after she was rejected [the employer] either continued to seek applicants for the position, or, as is alleged here, filled the position with a white employee.

491 U.S. at 187 (emphasis added). The fourth element failure to hire or failure to promote cases has been similarly described in many cases. E.g. McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973) (describing the fourth element as "after his rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications"); Fernandes v. Costa Bros. Masonry, 199 F.3d 572, 584 (1st Cir. 1999) (same in a failure to re-hire case), abrogated on other grounds, Desert Palace v. Costa, 539 U.S. 90 (2003); Woods v. Friction Materials, Inc., 30 F.3d 255, 259-60 (1st Cir. 1994) (same), abrogated on other grounds, Reeves v. Sanderson Plmbg., 530 U.S. 133 (2000); Gadson v. Concord Hosp., 966 F.2d 32, 34 (1st Cir. 1992) (same). See also Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004) ( in a failure to promote case plaintiff must prove that he was rejected "in favor of someone possessing similar qualifications").[3]

Even if the elements of a failure to hire case were an open question, Plaintiff's argument that leaving the position unfilled is sufficient to establish the fourth element makes no sense. If that were the law, an employer who once advertised a position would never be able to decide to cancel the announcement, without leaving itself open to suits by any qualified applicant who had applied for the position. This court must reject so expansive an interpretation of Title VII.

---

[3] Plaintiff cannot establish the third element of his prima facie case, either. To make the law fit his facts, Plaintiff attempts to morph the third Patterson element, from "he was rejected," into he "did not get the position." He was not rejected for the position; the vacancy announcement was cancelled.

II. Plaintiff has not set forth a genuine issue as to a material fact concerning Pretext.

Since Plaintiff cannot establish the elements of his prima facie case, no inference of discrimination arises, the burden never shifts to Defendant to offer a legitimate reason for its actions, and the Court will not reach the question of pretext. Even if Plaintiff had established a prima facie case, he cannot demonstrate pretext. In order to establish pretext, a plaintiff must "clear two significant hurdles." Tobin v. Liberty Mutual Ins. Co., 433 F.3d 100, 105 (1st Cir. 2005). First, plaintiff must refute the evidence of legitimate reasons offered by defendant, and he must "advance evidence of his own showing that [the employer's] asserted reason was a pretext hiding discrimination." Tobin v. Liberty Mutual Ins. Co., 433 F.3d 100, 105 (1st Cir. 2005). Plaintiff has not demonstrated that he can meet this burden.

Plaintiff contends that he has demonstrated a genuine issue regarding pretext because the Defendant's explanations for why it cancelled the 2001 vacancy announcements are "varying, changing, and conflicting." Plaintiff's Memorandum at 18. Defendant does not dispute that at a meeting with Jana Hubner on June 14, 2001, Newport Navy base managers discussed upcoming changes to the operations of Navy Housing at Newport that would lead to a smaller housing staff at Newport in the future. Plaintiff's Memorandum at 24 ("Defendant was undergoing the various studies its managers cited..."). Nor does he dispute that Hubner advised that it was best not to fill vacant housing positions. Rather, he notes that the witnesses who were present at that meeting differ in their description of what specific privatization studies were discussed at the meeting. Simply put, that inconsistency concerns details, not a material fact.

It is true that Captain Cooper, Alan Shannon, Charles Sylvia, and Jana Hubner had different recollections of which form of privatization study was the focus of the discussion at the

meeting. See Defendant's Memorandum at 6-7, describing the witnesses' different recollections. These differences in the witnesses' recollections are not material, because implementation of any one of those programs would have involved some form of privatization of the operation of Navy housing in Newport, Hubner Depo at 22-23, 30, 32; A 74-75, 77-78; Shannon Depo at 11-12; A 80-81, and would have resulted in a smaller civilian-employee housing staff in Newport. Hubner Depo at 23, 30, 40; A 75, 77, 79; Shannon Depo at 12, 31; A 81, 86. Those are the material facts. It is not unusual that different witnesses remember details of the same event differently. Plaintiff's attempt to paint these minor differences as sinister must be rejected.

Plaintiff also argues that the stated reason for cancelling the 2001 vacancy announcements – that anticipated privatization might lead to having to RIF housing employees – must be false, because the Navy hired William Murphy as a GS-11 Housing Manager Supervisor after the June meeting with Hubner.[4] In support of that argument, Plaintiff notes that Shannon testified at his deposition that they cancelled all 1173 positions after the Hubner meeting and points to the hiring of Murphy as evidence that testimony was false. Plaintiff's Memorandum at 10. Plaintiff fails to note, however, that later in his deposition Dr. Shannon corrected that testimony. Shannon Depo at 34-35, Supplemental Appendix ("SA") at 1-1a. He specifically testified that the Navy filled some positions after that meeting, explaining that some senior manager positions were filled because "we knew [those positions] would be continued on." He

[4] Murphy is not similarly situated and the Housing Management position he filled was different; it was a supervisory position. Bradley was ineligible to apply for the GS-11 position filled by Murphy. In his deposition, Bradley explained that to be eligible to apply for a position, an employee had to be no more than two grades below the advertised position. Bradley Depo at May 26, 2006 at 100, A26. Bradley was a GS-6 at the time Id. Additionally, Bradley has offered no evidence that he even applied for that position.

also explained that some positions within housing were more vulnerable than others.[5] Although Hubner recommended not filling any 1173 positions at the June 14 meeting, there was no freeze imposed at that time. Shannon Depo. at 25, SA2. The purported discrepancy Plaintiff points to demonstrates that the Navy attempted to cancel only the positions that it believed were vulnerable. It does not demonstrate pretext.

Plaintiff also contends that the Navy's refusal to "immediately advertis[e]" to fill the vacancy created by the departure of Laurie Bowers in the Spring of 2002, the temporary detail of Victor Ramsey rather than Plaintiff to perform those duties, and the subsequent cancellation of a

---

[5] Shannon testified as follows:

Q. You were asked in the very next question has the agency made any permanent placements in the housing function since being informed of the functionality assessment, do you see that question?
A. Yes.
Q. Do you see your answer?
A. No.
Q. Do you believe that, in fact, there were some positions filled after hearing of the functionality assessment?
A. Yes. The ones that we knew would be continued on. The senior manager positions. I had housing director positions like Mr. Silvia. Like the lady down in Groton that were leaving. And I did fill those positions.
Q. Was there any thought that certain positions within housing might be more vulnerable than others?
A. Yes.
Q. What kinds of positions were thought to be more vulnerable?
A. Those that specifically had to do with the housing manager position. We have two types of positions. We actually had three types. Housing management type of position, property manager. We had maintenance type positions. And we also had referral positions. The maintenance and the property managers were very vulnerable.

vacancy announcement which was opened in November 2002 all demonstrate that the Navy's proffered reasons are pretext for discrimination. Plaintiff's Memorandum at 22-24. Whether viewed in isolation or collectively, these events do not demonstrate pretext.

The refusal to immediately advertise the position vacated by Bowers is entirely consistent with the legitimate reasons offered by Defendant. Indeed, Plaintiff agrees that in April 2002 the Navy placed a hiring freeze on Housing positions like the ones that had been cancelled. Plaintiff's Memorandum at 12. Is plaintiff suggesting that in April 2002 the Navy imposed a nationwide freeze on hiring into the 1173 positions in order to hide its discrimination against him? In light of the April 2002 freeze, Plaintiff cannot rationally suggest that the failure to permanently fill the 2002 vacancy is evidence of discrimination.

Plaintiff states that an announcement to fill Bowers' position was posted on November 20, 2002, that he applied for the position on November 21, and that the vacancy announcement was cancelled the next day. Plaintiff's Memorandum at 13, 23. From this chronology, he suggests that the Navy cancelled the 2002 announcement because he had applied for the position. That suggestion is directly refuted by the record.[6] Karen Peckham, the Administrative Officer under Captain Cooper, testified that the actual recruitment is done out of the Philadelphia Human Resources Center, not Newport. Peckham Depo at 15-16, SA 3-4. She specifically stated that under the recruitment procedures Newport does not even see the applications until Philadelphia sends them a certificate of eligible employees. Id. Even then, Newport only

---

[6] Plaintiff states that Defendant has not argued that it is entitled to a summary judgment on Plaintiff's claim concerning the cancellation of the November 2002 vacancy announcement. That argument is implicit in our contention that the April 2002 freeze made it impossible to permanently fill the vacancy created when Bowers left.

receives the applications filed by those on the list of eligibles. Id. Plaintiff has not suggested any set of facts under which those who allegedly discriminated against him in Newport could have known he had applied for the position the day after he submitted an application. He certainly has not offered any evidence from which such an inference could be drawn.

Because that position could not be permanently filled, Victor Ramsey ("Ramsey"), an existing housing employee was temporarily detailed to Housing to perform duties of a Housing Manager Assistant for six months in May of 2002. Bradley Depo (5/30/2006) at 22, 26; A 1, 4. Defendant has explained that Ramsey was detailed to perform those duties, rather than Plaintiff, because Plaintiff was then in Public Works and if he were transferred to perform duties in the Housing Department, his position in Public Works could be abolished in the separate privatization study then under way in Public Works. See Defendant's Memorandum at 8-9. Plaintiff contends that he has demonstrated a genuine issue as to whether that is pretext because his position (referred to in the Navy as a billet) in Public Works could have been protected by filling it with someone else while Bradley was performing duties in Housing. Plaintiff's Memorandum at 22-23.

Plaintiff's suggestion that his position in Public Works could have been protected by temporarily placing someone into it while he was performing Housing duties is pure speculation. Bradley has not explained where such a person would come from. The Navy would either have to hire a new employee to put into Mr. Bradley's billet in Public Works, and run the risk of having to lay that person off if the position were abolished, or transfer an existing employee from another position, leaving some other billet vacant during the study. No matter how it were done, the Navy would either have to hire another person who might have to be terminated after the

study, or leave one billet or another vacant during the study.

Plaintiff also argues that he has demonstrated pretext by producing evidence that in November 2002 Charles Silvia told others that he did not want to hire Plaintiff into the Housing Department. Plaintiff's Memorandum at 23. Of course, for purposes of this motion, the Court must assume that the statements were made. Nonetheless, this evidence is too weak and too remote to carry plaintiff's burden of establishing by a preponderance of the evidence that he was subjected to retaliation or disability discrimination.

When asked about hiring Bradley in November 2002, Silvia is alleged to have said, "we do not want Alan." Murphy Depo at 32, SA 5.[7] Murphy admitted he had never heard Silvia say why he did not want to hire Bradley. Id. at 33, SA 6. Specifically, he never heard Silvia say that we do not want to hire Bradley because he is handicapped or because he files EEO complaints. Id. Nor had Murphy ever head Silvia say anything derogatory about Bradley's medical condition or disabilities. Id. More significantly, however, Murphy admitted that when Bradley reported to Silvia, they were disagreeable with each other, behavior which Murphy at times characterized as petty. Id. at 34-37, SA 7-10. Indeed, Bradley stated that if an employee did not do what Silvia wanted, Silvia would "get all bent out of shape and start yelling and calling you names and everything else." Bradley Depo (5/26/06) at 65-66, SA 11-12. He specifically stated that Silvia behaved this way with other employees, too. Id. In light of what is at most a weak inference of discrimination, this vague and weak evidence is insufficient to carry Plaintiff's

---

[7] Bradley states that Murphy quoted Silvia as saying, "we do not want Alan in the organization." Plaintiff's Memorandum at 23. On cross-examination, Murphy admitted that he did not remember Silvia stating we do not want him in the organization as a whole. All he could remember was that Silvia said, "we do not want Alan." Murphy Depo at 32, SA 5.

burden of showing that the proffered reason is pretext for discrimination. Moreover, contrary to Plaintiff's statement there is no evidence that Silvia made the decision to cancel the vacancy announcements. Indeed, he denied it. Silvia Depo at 31, SA at 13. Although he may have spoken to the decision-maker, he testified that Captain Cooper made it perfectly clear to him that they were going to hire Alan Bradley into one of those vacancies. Silvia Depo at 49, SA at 14. Under these circumstances, there is no basis for an inference that any adverse opinion Silvia may have had about Bradley affected the decision to cancel the announcements.

Silvia's statements are also too remote to provide any reasonable inference that the decisions to cancel the 2001 vacancy announcement and not to permanently fill the 2002 vacancy were based in discrimination. In Burton v. Town of Littleton, 426 F.3d 9 (1st Cir. 2005), plaintiff brought claims of discrimination based on age and religion. There, the plaintiff testified that the Superintendent of Schools called her an "old Jew bitch" in the same conversation in which he advised her he had prepared a letter notifying her of her termination. Noting that the decision to terminate plaintiff had been made two or three days before the statement, 426 F.3d at 20, the court held that no evidence established any nexus between the post-termination statement and the decision to terminate. The court of appeals affirmed the district court's grant of the defendant's motion for judgment as a matter of law. Here, the significantly milder and more ambiguous statements were allegedly made much later, 17 months after the cancellation of the 2001 vacancy announcements and 6 months after Ramsey was detailed to perform the housing manager duties. If the epithet "old Jew bitch," made two or three days after the decision to terminate is insufficient to carry plaintiff's burden, the ambiguous statement that "we do not want Alan" made months after the actions of which plaintiff complains must be inadequate to

rebut the legitimate reasons offered by the Navy.

III. Plaintiff Cannot Establish Discrimination Based on Disability or Prior EEO Activity under the Mixed-Motive Analysis

In an effort to sidestep his inability to establish the elements of a prima facie case of failure to hire under McDonnell Douglas, Plaintiff invokes the mixed-motive analysis of Desert Palace v. Costa, 539 U.S. at 101-02; and Price Waterhouse v. Hopkins, 490 U.S. 228, 244 (1989). Plaintiff cannot establish discrimination or retaliation under a mixed-motive analysis, either.

The mixed-motive analysis does not eliminate the plaintiff's burden of establishing that he was subject to discrimination or retaliation in an employment action.

> [E]ven in mixed-motive cases, plaintiffs must present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias.

Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 31 (2003) (affirming the district court's granting of defendant's motion for judgment as a matter of law); see also Desert Palace, 539 U.S. at 101 (plaintiff must "present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, religion, sex, or national origin was a motivating factor for any employment practice"). Affirming a grant of summary judgment to the employer in a mixed-motive case, the First Circuit has framed the dispositive question this way:

> In the end, the question is whether a rational trier of fact could conclude that the reason, in whole or in part, that Rivera was not hired for either position was [disability] discrimination, or ... retaliation.

Rivere Rodriguez v. Sears Roebuck, 432 F.3d 379, 381 (1st Cir. 2005). Here, no matter which analysis is applied, plaintiff cannot demonstrate that he suffered a discriminatorily motivated

adverse employment action when the 2001 job announcements were cancelled or when it chose not to permanently fill the vacancy which arose in 2002.

## IV. CONCLUSION

WHEREFORE, Defendant respectfully requests that the Court enter judgment in its favor.[8]

Respectfully submitted,

GORDON R. ENGLAND, SECRETARY,
DEPARTMENT OF THE NAVY,

By his attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Anthony C. DiGioia
ANTHONY C. DIGIOIA, #2495
Assistant U.S. Attorney
Chief, Civil Division
United States Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
(401) 709-5000
(401) 709-5017 (Fax)
Email: anthony.digioia@usdoj.gov

[8] Although we have not separately responded to Plaintiff's argument that he has shown causation, Plaintiff's Memorandum at 28-29, we rely on the argument set forth in our opening Memorandum.

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 6th day of November, 2006, I caused to be electronically filed the within Defendant's Reply to Plaintiff's Objection to Defendant's Motion for Summary Judgment with the Clerk of the United States District Court for the District of Rhode Island, using the CM/ECF System. The following participant has received notice electronically:

Joseph F. Hook,Esq.,
294 Valley Road
Middletown, Rhode Island 02842

/s/ Anthony C. DiGioia
ANTHONY C. DIGIOIA, #2495
Assistant U.S. Attorney