IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ALAN BRADLEY,<br>Plaintiff,<br><br>v.<br><br>GORDON R. ENGLAND, Secretary<br>of the United States Department<br>of the Navy,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 04-412ML |

**DEFENDANT'S PRETRIAL MEMORANDUM**

______In accordance with the Court's Pretrial Order of June 21, 2007, Defendant Gordon England, Secretary of the United States Department of the Navy ("Navy"), submits the following memorandum.

## I. POSITION OF THE DEFENDANT

### A. Introduction

Given the Court's recent Order granting in part the Navy's Motion for Summary Judgment, Plaintiff Alan Bradley's ("Bradley") remaining allegations in this case are that he is an individual with a disability and that in 2002 the Navy discriminated against him based on his disability when the Navy did not select him for a temporary, six-month Housing Manager position. In addition, Bradley asserts that the Navy's decision not to select him was in retaliation for his prior Equal Employment Opportunity ("EEO") activity in 2001. Bradley contends that the Navy's alleged conduct violates section 501 of the Rehabilitation Act. 29 U.S.C. § 791. Although Bradley suffered no monetary loss as a result of the Navy's decision not to appoint him to the temporary position, Bradley has demanded $1 million in compensatory damages as well as

equitable relief.

The Navy does not concede that Bradley is disabled under the Rehabilitation Act. In addition, the Navy will establish that it had a legitimate, nondiscriminatory reason for not putting Bradley in the temporary position at issue. Bradley also cannot meet his burden to prove pretext and discriminatory animus. With respect to alleged retaliation, Bradley cannot make the requisite showing that there was a causal connection between the decision not to place him in the temporary Housing Manager position in May 2002 and Bradley's September 2001 EEOC complaint. Last, even if Bradley were to prevail on his claims, his monetary damages are de minimis, and he is not entitled to punitive damages.

**B. Summary of the Facts**

In January 2001, Bradley and the Navy settled an EEO complaint that Bradley had filed previously regarding his nonselection for a Housing Management Assistant position in 1999.

In May 2002, Victor Ramsey ("Ramsey"), an employee in the Housing Department at Naval Station Newport, was detailed to fill a vacant Housing Manager position in the Housing Department for 190 days. The position was not advertised as a permanent position because the Navy had previously instituted a formal Navy-wide hiring freeze for that type of position. After six months, Ramsey returned to his prior position.

Captain Ruth Cooper (Cooper), commanding officer of Naval Station Newport at the time, considered detailing Bradley, rather than Ramsey, to the temporary position, but decided not to because Bradley was then an employee in the Public Works Department, which was undergoing a privatization study. Cooper was concerned that, if Bradley were transferred from Public Works to a temporary position in the Housing Department, his Public Works position

could be deemed expendable. Cooper was concerned that Bradley's position in Public Works Department would be permanently eliminated in his absence, leaving Bradley without any job at the conclusion of the six-month temporary position in the Housing Department. In addition, Cooper was concerned that leaving Bradley's Public Works position vacant during the privatization study could also have adverse consequences for the Public Works Department. To wit, if the study under way at the time concluded that Bradley's position was nonessential given his absence, the Public Works Department could be stripped of the man-hours associated with that position.

Bradley contends that at the end of Ramsey's temporary assignment as a Housing Manager, there was a need for someone to fill the position on a permanent basis. Bradley asserts that William Murphy ("Murphy"), a supervisor in the Housing Department, approached Charles Silvia, the Housing Director, about making Ramsey's assignment permanent. Silvia allegedly told Murphy that he could not permanently assign Ramsey to the position because of Bradley's interest in that position. In addition, Silvia allegedly made similar statements about Bradley to Ramsey. The Navy anticipates that witness testimony at trial will reveal that in truth Silvia made no statements suggesting any discriminatory animus toward Bradley.

**C. Defense Witnesses**

The Navy expects to call some or all of the following witnesses, either in person or by deposition, depending on the precise evidence presented by Bradley in his case in chief. In addition, the Navy reserves the right to call any witnesses listed by Bradley in his Pretrial Memorandum.

**1. <u>Captain Ruth Cooper</u>**

Captain Cooper will testify regarding the nondiscriminatory reasons for the decision not to assign Bradley to the temporary Housing Manager position, including her well-founded concerns about the effects of privatization on the Housing Department. In addition, she will testify to the facts surrounding the resolution of Bradley's earlier EEOC complaint. Last, Cooper will testify about the organization and operation of the relevant departments at Naval Station Newport.

**2. <u>Jana Hubner</u>**

Jana Hubner, Deputy Director of the Office of Naval Housing at Naval Facilities Engineering Command Atlantic during the relevant period, will testify regarding the Navy's personnel policies, the hiring freeze that the Navy implemented during the relevant period, and privatization.

**3. <u>Charles Silvia</u>**

Charles Silvia, Housing Director at Naval Station Newport during the relevant period, will testify regarding the organization and operation of the Housing Department and about the legitimate, nondiscriminatory reasons for not placing Bradley in the temporary Housing Manager position.

**4. <u>Kenneth Potter</u>**

Kenneth Potter, a Supervisory Human Resources Specialist, will testify that Bradley suffered nominal monetary damages, if any, as a result of not being assigned to the temporary Housing Manager position.

**4. Dr. Robert Carrelas**

Dr. Robert Carrelas will testify that Bradley did not have a qualifying disability and did not suffer any damages as a result of his nonplacement.

## II. THE NAVY'S LIST OF EXHIBITS

See Attachment A.

## III. APPLICABLE LAW

Bradley alleges disparate treatment and retaliation under section 501 of the Rehabilitation Act. (See Memorandum and Order dated April 18, 2007 at 9-10). Section 501 provides that the standard used to determine whether a violation has occurred is the same as that used under the ADA. See 29 U.S.C. §§ 791(g).

### A. Disability Discrimination

"[E]mployment discrimination cases alleging disparate treatment ordinarily proceed under the three-step, burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) . . . ." Quinones v. Buick, 436 F.3d 284, 289 (1st Cir. 2006). Initially, "plaintiff has the burden . . . of proving . . . a prima facie case of discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Plaintiff's proof of a prima facie case raises a presumption of discrimination. St. Mary's Honor Center, supra, 509 U.S. 502, 506 (1993); Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995). The burden then shifts to the defendant to provide some legitimate, nondiscriminatory reason for the adverse employment decision. At this stage, the employer need only articulate such a reason; the employer bears no burden of persuasion. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255-256 (1981). After the employer articulates nondiscriminatory reasons, the burden shifts back to the plaintiff,

Burdine, 450 U.S. at 253, and the presumption of discrimination evaporates, St. Mary's Honor Center, 509 U.S. at 507. The plaintiff must then prove that the reason given by the employer was a pretext and that the true reason was discrimination. Udo, 54 F. 3d at 13 (citation omitted).

To establish a prima facie case of discrimination here, Bradley must prove that: (1) he is a member of a protected class, i.e., that he was disabled; (2) he applied for an open position, (3) he was not selected and (4) the Navy hired another individual with similar qualifications who was not handicapped. Clifford v. Barnhart, 449 F.3d 276, 281 (1st Cir. 2006).

A person is disabled under the Rehabilitation Act if he "has a physical or mental impairment which substantially limits one or more of such person's major life activities," 29 U.S.C. 705(20)(B)(I), or "is regarded as having such an impairment," id. at 705(20)(B)(iii). See Burks v. Wis. Dep't of Transp., 464 F.3d 744, 755 (7th Cir. 2006). To constitute a substantial limitation, an impairment must prevent or severely restrict the person from engaging in important life activities, which can include the activity of working. Burks, 464 F.3d at 755-56.

Even if the Bradley could establish a prima facie case, which the Navy does not concede, Bradley cannot demonstrate that the legitimate reasons offered by the Navy were a pretext and that the true reasons were discriminatory. The Navy will establish that its employees had good-faith, nondiscriminatory reasons for detailing Ramsey, rather than Bradley, into the temporary position in 2002. Specifically, for example, Ramsey was temporarily detailed to perform those duties in 2002, rather than Bradley, because Ramsey was already in the Housing Department. If Bradley had been temporarily detailed out of Public Works in 2002, the privatization study then on-going in Public Works might have concluded that Bradley's vacated Public Works position could be eliminated, and Captain Cooper therefore was concerned about Bradley's future.

At this stage, Bradley must demonstrate that: (1) the nondiscriminatory reasons offered by the Navy were a pretext and (2) those false reasons were given to hide a discriminatory purpose. "It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: [handicap] discrimination.'" Mesnick v. Gen Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991). In the end, "the plaintiff's burden of producing evidence to rebut the employer's stated reason for its employment action 'merges with the ultimate burden of persuading the court that [plaintiff] has been the victim of intentional discrimination.'" Feliciano de la Cruz v. El Conquestador Resort and Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (quoting Burdine at 256). Here, Bradley cannot prove that the Navy's reasons were pretextual and certainly cannot prove that any such pretext was offered to hide intentional discrimination.

**B. Retaliation**

The Rehabilitation Act prohibits retaliation against employees for complaining about violations of the Act." Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1 st Cir. 2006). Such claims are typically evaluated through a variant of the McDonnell Douglas burden shifting framework. See Vives v. Fajardo, 472 F.3d 19, 21 (1 st Cir. 2007).

To prevail on a claim of retaliation, ''a plaintiff must establish that (1) [he] engaged in protected conduct; (2) [he] experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action.'' Calero-Cerezo v. US Dept of Justice, 355F.3d 6, 25 (1st Cir. 2004)..

Bradley cannot make out a prima facie case for his claim of retaliation, because he cannot

demonstrate a causal link between his 2001 EEO activity and the assignment of Ramsey to the temporary Housing Manager position months later in 2002. While the First Circuit has held that a one-month period between the activity and the adverse action is short enough to generate an inference, Calero-Cerezo, 355 F.3d at 26, it also has recognized that periods of three and four month are too long to establish a causal connection based on temporal proximity. Id, citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992).

Even if Bradley could establish a prima facie case of retaliation as to the temporary detail of Ramsey to perform Housing Manager duties in 2002, Bradley cannot prove by a preponderance of the evidence that the legitimate reasons offered for those actions were a pretext for discrimination.

## IV. JURY INSTRUCTIONS

See Attachment B

## V. LENGTH OF TRIAL

The Navy anticipates that its direct case will take approximately one and one-half days.

## VI. STIPULATIONS

The parties have not agreed to any stipulations, but will endeavor to confer prior to the June 29, 2007 Final Pretrial Conference.

Respectfully submitted,

GORDON R. ENGLAND, SECRETARY OF THE NAVY,
By his Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
Chief, Civil Division
RICHARD MYRUS
Assistant U.S. Attorney
Civil Division
United States Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
(401) 709-5000
(401) 709-5017 (Fax)
Email: dulce.donovan@usdoj.gov

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 22nd day of June, 2007, I caused to be electronically filed the within Defendant's Pretrial Memorandum with the Clerk of the United States District Court for the District of Rhode Island, using the CM/ECF System. The following participant has received notice electronically:

Joseph F. Hook,Esq.,
294 Valley Road
Middletown, Rhode Island 02842

/s/ Dulce Donovan

Dulce Donovan
Assistant U.S. Attorney
Chief, Civil Division
United States Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
(401) 709-5000
(401) 709-5017 (Fax)
Email: dulce.donovan@usdoj.gov