UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ALAN BRADLEY<br>Plaintiff | : | |
| | : | CA 04-412ML |
| GORDON R. ENGLAND<br>Secretary of the US Navy<br>Defendant | : | |

PLAINTIFF'S PRE-TRIAL MEMORANDUM

Now comes the Plaintiff Alan Bradley in the above captioned matter who through his counsel submits the within pre-trial memorandum.

1. (a) The Plaintiff Alan Bradley brought this case against Gordon R. England in his capacity as Secretary of the United States Navy, alleging that he was discriminated in his employment because of his disabilities, including epilepsy and partial paralysis in his right arm. In addition, the Plaintiff alleges that the Defendant engaged in reprisal against the Plaintiff for his engaging in protected Equal Employment Opportunity Commission Activities. Following this Court's granting of partial summary judgment on behalf of the Defendant, the remaining issues to be litigated is whether the Defendant engaged in disability discrimination and/or reprisal discriminations when it failed to place the Plaintiff in the position of Housing Manager on a temporary basis in violation of the Rehabilitation Act and Title VII of the Civil Rights Act. This Court has already ruled against the Plaintiff on his claims that he was discriminated against based upon his disabilities or reprisal for engaging in prior EEOC activity by the Defendant's failure to promote him to the position of Housing Manager on a permanent basis. Decision on Motion for

Summary Judgement page 15.

The Plaintiff will present the following witnesses.

1. Alan Bradley. The Plaintiff will testify as to his experience, and tenure with the Department of the Navy. He will testify regarding his being passed over for two Housing Manager positions in 1999, that led to his bringing an EEOC complaint, which in turn resulted in a settlement with the Defendant in January 2001, which required the Defendant to afford him priority consideration for vacant housing manager positions for a period of two years, and to advertise said vacant positions at the GS 7/9 level.

The Plaintiff will testify that he has been employed by the Defendant since 1985. He has an BS in architectural engineering degree from Roger Williams University and received that degree in 1983. Plaintiff also has a partially paralyzed right arm and epilepsy, a seizure disorder which, at the time of the discriminatory acts in this case, impairments substantially limited one or more of his major life activities, including driving, working, lifting, dressing, interacting with people, remaining conscious and concentrating.

The Plaintiff will testify that in the late 1980s he was employed as an assistant Housing Manager at the GS-5 level and he was involved in a motor vehicle accident on the base as a consequence of having an epileptic seizure. The Plaintiff will testify that following this accident, Robert Corey who was the then Director of the Housing Department prohibited Alan Bradley from operating a motor vehicle on base because of safety concerns that he could have another accident as a result of an epileptic seizure.

The Plaintiff will testify that on September 21, 2001, the Plaintiff filed a formal complaint with the EEOC DON 01-32411-003. In this complaint he alleged that the Defendant breached the terms of the January 24, 2001 settlement agreement reached in a prior EEOC

complaint, inasmuch as the Defendant failed to afford him priority consideration for the vacant housing manager positions, and that the failure to fill the positions with permanent government employees, was a result of discrimination based upon his disabilities of epilepsy and right arm paralysis. In addition he alleged that the failure to fill the positions was reprisal for his prior EEOC activity.

The Plaintiff will testify that notwithstanding his epilepsy he continued to hold a drivers license but did not drive on base because of the danger that he could have a seizure while driving.

The Plaintiff will also testify that in late 2004 his position as a supply tech was eliminated and he was down graded to a WG 5 Dispatcher, and that the Defendant articulated that this was the only position available to him because of his lack of specialized experience.

The Plaintiff will testify about conversations he had with Captain Cooper in the summer of 2001, in which she indicated that she was still considering him for the position of Housing Manager, and that he would be the first person considered when a position became vacant. He will testify that he requested that he be permitted to fill the position, even on a temporary basis but was refused.

Plaintiff will describe the emotion distress, and mental anguish, embarrassment, loss of confidence that he has incurred as a consequence of being discriminated against based upon his disability and retaliated against because of his prior EEOC Activity by the Defendant.

Charles Silvia: Mr. Silvia will testify that he was the Housing Director at the Naval Station Newport in 2001 and 2002 at the time the discrimination is alleged to have occurred in this case. He will testify that he was aware of Mr. Bradley's epilepsy, and disability regarding his arm. He will testify that he actually observed Mr. Bradley have epileptic seizures 5-6 times. He will testify that he has known Mr. Bradley since the 1980s, and was his supervisor for

approximately 8 years until 2000. He will testify that he was made aware of the January 24, 2001 settlement agreement that Alan Bradley made with the defendant based upon conversations that he had with Captain Cooper, and discussions he had with Captain Cooper regarding ways to accommodate Alan Bradley's inability to drive. Charles Silvia will testify that vacancy announcements were made following two retirements in the Spring of 2001 and advertisements went out to fill the positions at both GS 7 and 9 level. He will testify that it was his decision to cancel the positions after a meeting with Jana Hubner. He will testify that he filled the Housing Departments need for managers with temporary contract workers. He will testify that in the Spring of 2002, a third housing manager position became vacant, and that he filled this position by detailing Victor Ramsey to the position for a 190 day period. He will testify that he filled this temporary position without any competition or advertisement. Plaintiff expects to elicit testimony that at the time that Mr. Silvia placed Mr.. Ramsey in the temporary assignment, he was aware of Mr. Bradley's settlement, and his EEOC action seeking to enforce compliance with that settlement so that he could obtain a position as a housing manager.

Mr. Silvia will testify that he was aware of Alan Bradley's EEOC complaint that was filed in September 2001, and that he filed and completed an affidavit during the investigation of that EEOC case on August 16, 2002. He will testify that in 2001 after the permanent positions were cancelled that he considering filling the positions temporarily, and that the reasons he gave during the EEOC investigator, as to why he would not fill the Housing Manger positions even on a temporary basis, were in fact invalid.

He will testify as to the process that the Housing Department goes through in order to recruit civil service employees. He will testify that he was responsible for the initiating the 2001 advertisements to fill the Housing Manager positions, and he likely would have been responsible

for initiating a November 2002 recruitment that was subsequently cancelled.

He will also be asked about his understaning as to details and the procedure that must be followed in detailing employees and how this can assist or help the detailed employee's carreer.

Victor Ramsey: Victor Ramsey will testify that he was temporarily assigned to he position of Green Lane Housing Manager in the Spring of 2002. He will testify that during his tenure as Green Lane Housing manager he inquired of Charles Silvia about making his position as a Green Lane Housing Manager permanent. He will testify that at that time, Charles Silvia told Mr. Ramsey that "Alan Bradley had filed a complaint, and that because of that complaint, that he would have to hire Alan Bradley before he could make my promotion permanent." Mr. Ramsey will also testify that Mr. Silvia told him that this was not going to happen, and that "Alan would not be given a position in the Housing Department while he was there." He will further testify that Mr. Silvia said that "Alan was not coming into the Housing Department and that I could thank Alan for not getting a permanent promotion." He will testify that this conversation occurred in the late fall of 2002, and that after the above referred to conversation with Charles Silvia, that he was removed from my position as the Green Lane Housing Manager.

Robert Corey: Mr. Corey will testify that Mr. Bradley held the GS-5 Assistant Housing Manager career ladder position until the mid 1990s, at which time his position was abolished. He will testify as to the duties of a Housing Manager. He will testify that in the mid 1990s, Mr. Bradley position was changed from his position as a GS 5 Assistant Housing Manager and placed into the position of a Supply Technician. Robert Corey created the position of Supply Technician for Alan Bradley to accommodate for his physical limitations.

Thereafter, in the summer of 1999, the Plaintiff applied for two vacant housing manager

assistant positions at the GS 7- level in the 1173 series. See Corey deposition page 30 lines 8-20 and exhibit 6 to Corey Depo. He was rated by the Navy as qualified for the positions, along with Mary Beth Oliviera and Jamie Thiebault. Corey Depo page 24 lines 2-3. However, Mr. Corey will testify that Alan Bradley could not fill the position Housing Manager at the GS-7 level positions because he could not drive.

William Murphy: Mr. Murphy will testify that he was a Housing Manager Supervisor from the summer of 2001 through 2002. He will testify that there was a need to fill the position of Housing Manager with a permanent employee. He will testify that he inquired of Mr. Silvia as to why Victor Ramsey could not keep the appointment that was given to him as Green Lane Housing Manager, and Mr. Silvia said "Alan was complaining about the appointment." Mr. Murphy will testify that he asked Mr. Silvia to hire Alan, to which Mr. Silvia replied "No Alan is not coming to this organization" and "we do not want Alan in the organization." Mr. Murphy indicated that there was a was a concern about Alan driving after his accident. Murphy depo. Page 27 lines 6-

Mr. Murphy will also testify that the essential functions of a Housing Manager could be performed without driving.

James Allen: Mr. Allen will testify that in 2001 he was the union representative. He will testify that on July 12, 2001, Captain Cooper met with the applicants for the GS 7/9 Housing Manager positions, including Alan Bradley, to advise them that the positions were being cancelled and that the positions were going out to contract. He will testify that at this meeting Alan Bradley spoke to Captain Cooper about the settlement agreement that he had made with her concerning affording him priority consideration for the vacant Housing Management Positions.

He will testify that at this meeting, the Plaintiff made allegations that Captain Cooper cancelled the recruitment to get out of his settlement. He will testify that Captain Cooper advised Alan Bradley that she was still thinking about placing Alan Bradley in housing. However, the next day on July 13, 2001, Captain Cooper told him that because Alan Bradley did not have a drivers license he could not fill the Housing Manager Assistant position.

Mr. Allen will testify that at a July 2001 meeting Captain Cooper again met with Alan Bradley and James Alan. At this meeting Captain Cooper told Alan Bradley that there was a possibility of a Reduction in Force and that if the plaintiff were placed in housing that he could loose his job as a consequence of the reduction in force. Alan Bradley advised Captain Cooper that he nevertheless wanted the Assistant Housing Manager position even on a temporary basis, and was willing to take the risk of losing his job in a future reduction in force. Captain Cooper told Alan Bradley that in the event that a housing manager position became vacant that he would be the first one to fill the position.

Richard Evans: Mr. Evans will testify that he was Mr. Bradley's supervisor in the Public Works Department. He will testify that in the Spring of 2001, he received a call from Captain Cooper that Alan was going to be hired as a Housing Manager. He will testify that prior to filling the housing manager vacancies, Alan Bradley's name had come back as from human resources in Groton as a referral for selection. Captain Cooper told Richard Evans, that: "looks like I'll be able to put Alan in one of those positions . . . I have three positions. He's a qualified candidate and we can reasonable put him in the job with no problem." Evans Depo. At page 11 lines 14-21. He will testify that shortly after this call, the recruitments were cancelled. He will testify that he attended a meeting with Alan Bradley, Captain Cooper, and

James Alan, in which Captain Cooper advised that the Housing Manager positions would not be filled. He will testify that Captain Cooper directed that he increase Alan Bradley's duties so that he would be eligible for a GS 7. He will testify that Mr. Bradley was not upgraded to a GS 7. He will testify that Alan was a diligent and competent worker for the Public Works department. He may corroborate Alan Bradley's emotional distress and mental anguish suffered as a consequence of not being assigned the position of housing manager.

Laurie Bowers: Will testify regarding correspondence sent to Alan Bradley by e-mail dated May 16, 2002, and will testify that she left the housing department as a housing manager in early June of 2002.

Captain Ruth Cooper's testimony will be offered by way of deposition. Her testimony has been previously designated by the Plaintiff.

Lisa Boiani, will testify as to the varies positions that Alan Bradley was considered before the 2004 RIFF. She will testify that Mr. Bradley was not eligible for any position other than a WG 5 Dispatcher because he lacked specialized experience. She will be asked about the defendants agreement with the Union and when details are appropraite and the procedure that must be folloed in detailing or temporaily assigning employees. She will be asked how details can assist in the advancement of employees careers.

Dr. Robert Carrellas: Will testify that he is the Plaintiff's family doctor, and that during the pertinent periods in this litigation that he has treated the Plaintiff for epilepsy, which

remained uncontrolled, and that the Plaintiff has partial paralysis of his right arm. He will testify as to the limitations that the impairments have on the Plaintiff's life activities.

**2. Memorandum on legal issues.**

A. General Liability.

The Plaintiff brought this case alleging disability discrimination and retaliation in violation of section 501 of the rehabilitation act. 29 USC section 791. Congress created a private right of action to enforce section 501 by making Title VII remedies available to an employee with respect to a complaint under this title. 29 USC section 794a(a)(1); Rivera v. Heyman, 157 F.3rd 101, 103 (2nd Cir. 1998). Under the section 501 of the Rehabilitation Act, and Title VII, and the Americans with Disabilities Act, the Defendant, a United States Agency is prohibited from discriminating against the plaintiff in employment matters "because of" his disabilities. In addition, the government is prohibited from discriminating against the plaintiff or retaliating against the plaintiff on account of protected activities. See, e.g., 42 U.S.C. §§ 2000e-3(a) (Title VII), 12203 (ADA)

In this case, the relevant inquiry is whether the decision not assign Alan Bradley to the position of Housing Manager or Assistant Housing Manager was motivated by Mr. Bradley's disabilities or as reprisal for his prior EEOC claims. Desert Palace, Inc. v. Costa, 539 U.S. 90, 156 L. Ed. 2d 84, 123 S. Ct. 2148 (2003). Where the plaintiff can show that his disabilities played a motivating factor even in part, in the decision not to assign him to the positions, he will have established liability.[1] The plaintiff is permitted to prove that his disability played a

[1] In a Americans with Disabilities Act claim, if the disability was a motivating factor, regardless of whether the agency would have taken the same action anyway, the agency is liable

motivating factor by way of circumstantial or direct evidence. Desert Palace Inc. V. Costa, 539 U.S. 90, 123 S Ct. 2148; 156 L.Ed 84. (2003). However, if the Plaintiff can show that his disability was a motivating factor, the Employer can assert a partial defense, by proving that it would have made the same decision even absent consideration of the Plaintiff's disability. Id. Thomas v. Contuocook Valley School District, School Adm Unit No. 1, 150 F.3rd 31 (1st Circuit 1998). See also Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989) (plurality opinion) (Our Supreme Court opined that : [I]f the plaintiff establishes that a prohibited discriminatory factor played a `motivating part' in a challenged employment decision, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision anyway."). Price Waterhouse, 490 U.S. 228. However, to avail itself of this partial defense

---

for equitable relief Injunctive relief, attorney fees, and costs. Prior to the Civil Rights Act of 1991 (CRA), which became effective on November 21, 1991, an employer could avoid liability in a mixed motive case if it could show that it would have made the same decision even absent the unlawful factor. See Price Waterhouse, 490 U.S. 228. The CRA effectively overruled this holding, adding Section 703(m) to Title VII. This section makes clear that a violation of Title VII is established when a complaining party demonstrates that "race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). Regardless of whether the agency is able to establish that it would have made the same decision even absent the unlawful discrimination, the complainant, while not eligible to receive the full range of available remedies, may be entitled to **declaratory relief, injunctive relief, attorney's fees and costs**. See Guidance, Part III.C., 18-20

**The Americans with Disabilities Act, adopted the enforcement provisions of Title VII, including the provision that allows for declaratory relief if the complainant demonstrates that a discriminatory consideration motivated the employment action, even though other factors also motivated that decision.** See 42 U.S.C. § 12117(a) (adopting various enforcement provisions of Title VII, including 42 U.S.C. § 2000e-5 (which refers to 42 USC section 2000e-2 as an enforcement mechanism). Moreover, several circuit courts have held that the mixed-motive analysis available in the Title VII context applies equally to cases brought under the ADA. See Baird v. Rose, 192 F.3d 462, 470 (4th Cir. 1999); Foster v. Arthur Anderson, LLP, 168 F.3d 1029, 1033-34 (7th Cir. 1999); McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1076 (11th Cir. 1996); **Katz v. City Metal Co**., 87 F.3d 26, 33 (1st Cir. 1996); Buchanan v. City of San Antonio, 85 F.3d 196, 200 (5th Cir. 1996); Pedigo v. P.A.M. Transp., Inc. 60 F.3d 1300, 1301 (8th Cir. 1995).

the defendant must do more than show that it was permitted to take the requisite actions, but rather must show that it would have made the same decision even absent consideration of the Plaintiff's disabilities. Thomas v. Contuocook Valley School District, School Adm Unit No. 1, 150 F.3rd 31 (1st Circuit 1998).

In Desert Palace Inc. V. Costa, 539 U.S. 90, 123 S Ct. 2148; 156 L.Ed 84 our Supreme Court held that under Sec. 2000e-2(m), "a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice.""

Prior discrete actions of discrimination that are time barred, are not actionable, however, however, they are relevant as background information. Our Supreme Court has said that "Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002). In this case, the Plaintiff intends on introducing evidence of time barred claims that he was discriminated against in 1999 when he was not selected for Housing Managers positions, as background evidence as to how his EEOC case that led to the January 24, 2001 case commenced, and as evidence of pretext.

**B. Adverse actions regarding failure to assign the Plaintiff to the position of assistant housing manager or Housing Manager, in 2001 after the permanent positions were cancelled, and in the fall of 2002 when Victor Ramsey's detail had ended in the retaliation context..**

The Plaintiff's claims that he was discriminated against based upon his disabilities when Victor Ramsey was assigned to the position of Green Lane Housing Manager on a temporary detail, the Plaintiff is claiming reprisal discrimination for that same action, and for the Defendant's failure to temporarily assign him to the position of Housing Manager or assistant

Housing Manager after the Spring recruitments were cancelled through the fall of 2002, after Victor Ramsey's assignment was completed. In addition, to the elements necessary to establish a claim of reprisal set forth above and set forth in Desert Palace Inc. V. Costa, 539 U.S. 90 the Plaintiff must establish that the employer took an adverse action against him because of his engaging in protected activity.

In Velez v. Janssen Ortho, LLC 2006 U.S. App. Lexis 27272 (1st Cir. 2006) The First Circuit held that the requirement for an adverse employment action in a retaliation claim requires a showing that the plaintiff 1) applied for a particular position 2) which was vacant, and 3) for which she was qualified, and that she was not hired for the position. The "'adverse employment decision' is the closing of the job opening to her and the loss of opportunity even to compete for the position." Additionally, in Ruggles v. California Polytechnic State University,, the Ninth Circuit found that reprisal discrimination could be found even when the position was not filled, or was eliminated as to the Plaintiff. 797 F2nd 782 (9th Cir. 1986) (holding that in retaliatory claims arising in the failure to hire context in order to establish a primae facie case, the Plaintiff meets her burden by showing that 1) she engaged in protected activity, 2) The position was eliminated as to her, and 3) the position was eliminated because of her protected activities);

In this case, there were vacant Housing Manager positions from June 2001 through 2002, which the Plaintiff formally sought to fill by way of application, by way of verbal communications to Captain Cooper, and through written correspondence through his attorney. Captain Cooper, and Charles Silvia are expected to admit that they considered Plaintiff filling these positions on a temporary basis. This is sufficient to establish an adverse action for purposes of reprisal discrimination for the period from June 2001 through the fall of 2002.

**C. Damages:**

"It is well settled that Title VII plaintiffs can prove emotional injury by testimony without medical support." Kim v. Nash Finch Co. 437 F3rd. 717 (8th Cir. 1996) citing Moody v. Pepsi-Cola Bottling Co., 915 F.2d 201, 210 (6th Cir. 1990); Williams v. TransWorld Airlines, 660 F.2d 1267, 1273 (8th Cir. 1981). However, damages for mental and emotional distress will not be presumed, and must be proven by "competent evidence." Carey v. Piphus, 435 U.S. 247, 263-64 & n.20, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978); Rodgers v. Fisher Body Div., General Motors Corp., 739 F.2d 1102 (6th Cir. 1984). Although essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others. Carey, 435 U.S. at 264 n.20. See also DeNieva v. Reyes, 966 F.2d 480, 487 (9th Cir. 1992) (plaintiff testified to suffering emotional distress manifested by insomnia, dizziness and vomitting and received $ 50,000 compensatory damages); Secretary of HUD v. Blackwell, 908 F.2d 864, 872-73 (11th Cir. 1990) ($ 40,000 award upheld on basis of testimony regarding humiliation, insomnia and headaches). A plaintiff's own testimony, coupled with the circumstances of the case, can sustain the burden of establishing emotional suffering. Ledbetter v. Alltell Corp. Serv. (8th Cir. 1996) See Kim v. Nash Finch Co., 123 F.3d 1046, 1065 (8th Cir. 1997).

Plaintiff has set forth additional legal citations and issues as part of his proposed jury instructions.

3. Plaintiff has attached a complete list of exhibits.

4. The Plaintiff has attached a complete set of proposed jury instructions.

5. Counsel for the Plaintiff estimates that this case will take 1 week for a jury trial.

6. Counsel for the Plaintiff is not aware of any additional matters that he feels will assist in the disposition/hearing of this matter. However, if and when such information becomes available he will provide it to the Court.

PLAINTIFF
Alan Bradley
By his Attorney

/s/ Joseph F. Hook

______________________________

Joseph F. Hook, RI Bar No 5418
294 Valley Road
Middletown, RI 02842
(401) 846-5200
Fax (401) 848-0984

CERTIFICATE OF SERVICE

I the undersigned certify that on this 22 day of June 2007 , I served a copy of the within on Dulce Donovan through the Court CM/ECF System.

/s/ Joseph F. Hook