UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

ALAN BRADLEY :
Plaintiff :

v. : CA 04-412ML

GORDON R. ENGLAND :
in his Capacity as :
Secretary of the US Navy :
Defendant :

PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

**1. General Liability Instruction on Disability Discrimination.**

Under Section 501 of the Rehabilitation Act, the Plaintiff can establish liability against the Defendant if he establishes that he suffered an adverse employment action "because of" his disability. Plaintiff, Alan Bradley accuses the Department of Navy of disability discrimination. Specifically, he claims that the defendant through its agents took adverse employment action against him because of his disability, when Defendant refused to detail him, or assign him temporarily to the position of Housing Manager. To succeed on his claim of disability discrimination, the plaintiff must prove, by a preponderance of the evidence, that his disability of epilepsy or partially paralyzed right arm, was a motivating factor in the defendant's decision not to temporarily assign him to the position of Housing Manager.

However, an employer is free to refuse to assign a person to a detail or temporary position, for any nondiscriminatory reason even if its business judgment seems objectively unwise. However, you may consider the believability of an explanation in determining whether it is a cover-up or pretext for discrimination based upon any of the Plaintiff's disabilities.

To prove that the plaintiff's disabilities was a "motivating factor," in the adverse employment action, the plaintiff must show that defendant used Plaintiff's disabilities as a consideration in deciding not to place the Plaintiff in the position of housing manager on a temporary basis. Plaintiff is not required to show that his disabilities was the only reason the defendant decided not to place the Plaintiff in the temporary housing manager position. But he must show that defendant considered any of his disabilities, in part, in making its decision.

Plaintiff is not required to produce direct evidence of the unlawful motive. You may infer knowledge and/or motive as a matter of reason and common sense from the existence of other evidence—for example, explanations that you find were really pretextual. "Pretextual" means false or, though true, not the real reason for the action taken.

If you find that plaintiff has proven by a preponderance of the evidence that his disabilities or his prior Equal Employment Opportunity Commission activity was a motivating factor in defendant's decision not to temporarily assign the Plaintiff to the position of housing manager, then the burden of proof shifts tothe defendant to prove by a preponderance of the evidence that it would nevertheless have taken the same action even if it had not considered plaintiff's disabilities.

If you find that the Defendant has not met its burden of proof, your verdict will be for the Plaintiff and you will proceed to consider damages as I will later describe them. But if you find that Defendant has proven that it would have taken the same action regardless of the Plaintiff's protected characteristic, you will not consider damages. I have prepared a special verdict form to assist you in addressing these issues.

**2. Coverage Instruction. Whether the Plaintiff is a qualified individual with a**

**disability.**

To succeed on this claim, the Plaintiff must prove by a preponderance of the evidence all of the following: First, that he had a physical or mental impairment, had a record of having such impairment; or was regarded by the defendant as having an impairment, of epilepsy and or partially paralyzed right arm, Second, that the impairments substantially limited the Plaintiff's ability to perform a major life activity or affected a major life activity. Major life activities, include, working and driving. See Reynold v. Brock, 815 F2nd 571 (9th Cir 1987); Third, the plaintiff was a qualified individual, which means he possessed the necessary skill, experience, education and other job-related requirements for specify job or position sought and could have performed the essential functions of job or position sought at the time defendant took the adverse actions of refusing to temporarily assign him to the position of Housing Manager.

A person has a disability, and therefore qualifies for protection under the Rehabilitation Act, and Americans with Disabilities Act, if that person has: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or ( C ) [is] regarded as having such an impairment." 42 U.S.C. §§ 12102(2), 12112; see, e.g., Sutton v. United Air Lines, Inc., 527 U.S. 471, 489-90 (1999) (ADA) (discussing the "regarded as having"standard); Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521-25 (1999) (ADA) (same); Sheehan v. City of Gloucester, 321 F.3d 21, 25-26 (1st Cir. 2003) (although city/employer regarded plaintiff as capable of work as police officer, to meet "regarded as" standard, plaintiff "would have to show that the City regarded his hypertension as rendering him unable to perform a broad range of jobs."); Bailey v.

Georgia-Pacific Corp., 306 F.3d 1162, 1166-67 (1st Cir. 2002) (same); Santiago Clemente v. Executive Airlines, Inc., 213 F.3d 25, 33-34 (1st Cir. 2000) (ADA)(discussing and rejecting plaintiff's arguments that she had a record of impairment and that she was regarded as having an impairment).

A "physical or mental impairment" is:(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. 29 C.F.R. § 1630.2(h); see also Bragdon v. Abbott, 524 U.S. 624, 631-32 (1998) (using 28 C.F.R. § 41.31(b)(1) definition of impairment in ADA case).

The Supreme Court has defined "major life activity" to include "those activities that are of central importance to daily life." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002) (ADA).

The plaintiff may demonstrate that his own preemptive decision to limit or refrain from a major life activity was necessary to avoid placing herself or others at imminent risk of physical injury. Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 10 (1st Cir. 1999) (ADA). The assessment of the severity of any condition must include the effect of any corrective measures. Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999) (ADA) ("[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that

person is ‘substantially limited’ in a major life activity and thus ‘disabled’ under the Act.”); Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521 (1999) (ADA) (same).

Whether a person is disabled should be based on an individualized assessment of the impact of the physical condition on that specific person’s capacity, rather than a generalized classification of the particular medical diagnosis. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 185 (2002) (ADA) (“It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those claiming the Act’s protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.”)

In determining whether plaintiff's physical or mental impairment substantially limits his ability to perform a major life activity, you should compare plaintiff's ability to perform the activity with that of the average person. In doing so, you should also consider: (1) the nature and severity of the impairment; (2) how long the impairment will last or is expected to last; and (3) the permanent or long-term impact, or expected impact, of the impairment. It is not the name of an impairment or condition that matters, but rather the effect of that impairment or condition on the life of the Plaintiff

You must determine whether the Plaintiff was a qualified person with a disability. This means that he could, with or without reasonable accommodation, can perform the essential functions of the employment position.

In order to decide what the essential functions of a job are, you may consider the following factors: (1) the written job descriptions; (3) the amount of time spent on the job

performing the function in question; (4) consequences of not requiring the person to perform the function; (5) the work experience of people who have held the job; (6) the current work experience of people in similar jobs; (7) whether the reason the position exists is to perform the function; (8) whether the function is highly specialized and the individual in the position was hired for his or her expertise or ability to perform the function; No one factor is necessarily controlling. You should consider all of the evidence in deciding whether a job function is essential.

Federal law requires employers to provide reasonable accommodation to employees who are disabled unless the accommodation would impose an undue hardship on the employer or pose a direct threat to the employee or others. "Direct threat" means a significant risk of substantial harm to the health or safety of the employee or others that cannot be eliminated or reduced by reasonable accommodation. A reasonable accommodation is a modification or adjustment to the work environment or to the manner in which a job is performed. A reasonable accommodation may include: modifying or adjusting a job application process to enable a qualified applicant with a disability to be considered for the position; making existing facilities used by employees readily accessible to and usable by individuals with disabilities; job restructuring; part-time or modified work schedule; reassignment to a vacant position; acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, training materials or policies; provision of qualified readers and interpreters; other similar accommodations for individuals with plaintiff's disabilities

A reasonable accommodation does not include changing or eliminating any essential function of a job, shifting any of the essential functions of the job to others, or creating a new

position for the disabled employee. An "undue hardship" is an action that would create significant difficulty or expense for the employer, considering the nature and cost of the accommodation, the overall financial resources of the employer, the effect of the accommodation on expenses and resources, and the impact of the accommodation on the operations of the employer], including the impact on the ability of other employees to perform their duties and the impact on employer. Although the plaintiff "bears the burden of proposing an accommodation that would enable him [or her] to perform [the] job effectively and is, at least on the face of things, reasonable." Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir. 2001) (ADA); Reed v. LePage Bakeries, Inc., 244 F.3d 254, 258-60 (1st Cir. 2001) (ADA) (once plaintiff has met his or her burden, defendant bears burden of proving that the proposed accommodation would be an undue hardship); see also id. (discussing the "well recognized tension"between the plaintiff's and the defendant's burdens).

An employer may be liable for a failure to engage in this interactive process if the plaintiff can demonstrate that "had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions." Kvorjak, 259 F.3d at 52; Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 515 (1st Cir. 1996) (ADA) (upholding judgment for defendant but noting that "[t]here may well be situations in which the employer's failure to engage in an informal interactive process would constitute a failure to provide reasonable accommodation that amounts to a violation of the ADA").

**3. Adverse employment action**

An "adverse employment action" is one that, standing alone, actually causes damage,

tangible or intangible, to an employee. The fact that an employee is unhappy with something his or her employer did or failed to do is not enough to make that act or omission an adverse employment action. An employer takes adverse action against an employee only if it: (1) takes something of consequence away from the employee, for example by discharging or demoting the employee, reducing his or her salary, or taking away significant responsibilities; or (2) fails to give the employee something that is a benefit of the employment relationship. "Details consist of an employee's temporary assignment to a position or set of duties without receiving an actual upgrade in pay or job status that would accompany a permanent position. Details are considered desirable to the extent that they give employees an opportunity to gain experience to positions to which they seek promotion. Lyons v. Gordon R. England, 307 F 3rd. 1092 (9th Cir. 2002).

Our Supreme Court has held that prohibited discrimination "is not limited to 'economic' or 'tangible' **discrimination.** The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to 'strike at the entire spectrum of disparate treatment . . .' in employment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)(quoting Los Angeles Dep't of Water & Power v. Manhart, 435 U.S. 702, 707 n.13 (1978)).

**4. Decision maker/causation.**

Plaintiff must show a link between the evidence of bias and the challenged employment action. This can be shown if biased statements were made by the decision maker or one who was involved in the decision, at or around the time that the decision was made, even if the biased remarks were not specifically related to the particular employment decision at issue. EEOC v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir. 1990). McDonald v.

Henderson, Appeal No. 03990136.

A link between the adverse action can also be shown by circumstantial evidence. Desert Palace v. Costa, 539 U.S. 90; 123 S. Ct. 2148.

"Direct evidence" has been interpreted as "conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude ... sufficient to permit the fact finder to find that that attitude was more likely than not a motivating factor in the employer's decision." Thomas **v.** First Nat'l Bank, 111 F.3d 64, 66 (8th Cir.1997) (quoting Kriss **v.** Sprint Communications Co., 58 F.3d 1276, 1282 (8th Cir.1995)). "Not all comments that reflect a discriminatory attitude will support an inference that an illegitimate criterion was a motivating factor in an employment decision." Radabaugh **v.** Zip Feed Mills, Inc., 997 **F.2d** 444, 449 (8th Cir.1993). For example, "direct evidence" does not include "stray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself." Price Waterhouse, 490 U.S. at 277, 109 S.Ct. at 1805.

However, the inquiry is not limited to those formally entrusted with decision making duties. If you finder that a person who made the remarks was closely involved in the decision making process. Mohr v. Dustrol, Inc., 306 F3rd. 636 (8th Cir, 2002). See Gagnon, 284 **F.3d** at 848 ("Courts look beyond the moment a decision was made in order to determine whether statements or comments made by other managerial employees played a role in the ultimate decision making process.").; Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d

1316 (8th Cir.1994) (employers cannot escape responsibility for sex discrimination "when the facts on which the reviewers rely have been filtered by a manager determined to purge the labor force of women."). In such a case, you may impute the discriminatory motive of the biased subordinate, as opposed to the motives of the ignorant decisionmaker, to the Defendant.

**5. Retaliation. "Discrimination" on account of protected activities. See, e.g., 42 U.S.C. §§ 2000e-3(a) (Title VII), 12203 (ADA) (Rehabilitation Act)**

Plaintiff accuses defendant of violating federal law by retaliating against him for engaging in protected activities, namely, for filing EEOC complaints and seeking enforcement of a prior EEOC settlement agreement entered with the Defendant. To succeed on this claim, plaintiff must prove by a preponderance of the evidence that First, defendant took adverse action against him; and Second, his protected activity was a motivating factor in defendant's decision to take adverse employment action against him. Plaintiff is not required to prove that his protected EEOC activity and efforts to enforce his EEOC settlement had merit in order to prove the retaliation claim.

Specifically, the Plaintiff claims that the Defendant took retaliated against him and took adverse employment action against him in failing to assign him to the housing manager position on a temporary basis. To prove the retaliation claim, the plaintiff must prove that his prior EEOC activities or his efforts to enforce his EEOC settlement agreement was a "motivating factor" in the adverse employment decision. The plaintiff must show that defendant used his prior protected activity as a consideration in deciding not to place the Plaintiff in the position of housing manager on a temporary basis. Plaintiff need not show that

his protected activities was the only reason the defendant decided not to place the Plaintiff in the temporary housing manager position. But he must show that defendant considered in part the Plaintiff protected prior EEOC activity in making its decision. Plaintiff is not required to produce direct evidence of unlawful motive. You may infer knowledge and/or motive as a matter of reason and common sense from the existence of other evidence—for example, explanations that you find were really pretextual. “Pretextual” means false or, though true, not the real reason for the action taken.

If you find that plaintiff has proven by a preponderance of the evidence that his prior EEOC activity was a motivating factor in defendant’s decision not to temporarily assign the Plaintiff to the position of housing manager, then the burden of proof shifts to the defendant to prove by a preponderance of the evidence that it would nevertheless have taken the same action even if it had not considered plaintiff’s prior EEOC activity. If you find that the Defendant has not met its burden of proof, your verdict will be for the Plaintiff and you will proceed to consider damages as I will describe them.

6. Compensatory Damages

The fact that I instruct you on damages does not represent any view by me that you should or should not find Defendant liable. Plaintiff seeks to recover damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other noneconomic losses. You must not consider any lost wages or fringe benefits. Federal law requires that I as the judge determine the amount of any lost wages and fringe benefits that Plaintiff shall recover if you find Defendant liable.

You must determine instead what other loss, Plaintiff has suffered or will suffer in the future caused by any disability or reprisal discrimination that you find Defendant has committed under the instructions I have given you. We call these compensatory damages.

No evidence of the monetary value of intangible things like emotional pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of enjoyment of life and other noneconomic losses is available and there is no standard I can give you for fixing any compensation to be awarded for these injuries. Even though it is obviously difficult to establish a standard of measurement for these damages, that difficulty is not grounds for denying a recovery on this element of damages. You must, therefore, make the best and most reasonable estimate you can, not from a personal point of view, but from a fair and impartial point of view, of the amount of emotional pain, suffering, inconvenience, mental anguish, embarrassment, loss of enjoyment of life and other noneconomic losses you find that Plaintiff has undergone and can probably be expected to suffer in the future as a result of Defendant's conduct. And you must place a money value on this, attempting to come to a conclusion that will be fair and just to both of the parties. Although, this may be difficult for you to measure in terms of dollars and cents, but there is no other rule I can give you for assessing this element of damages.

You may also award Plaintiff prejudgment interest in an amount that you determine is appropriate to make him whole and to compensate him for the time between when he was injured and the day of your verdict. It is entirely up to you to determine the appropriate rate and amount of any prejudgment interest you decide to award.

Plaintiff by his attorney,

/s/ Joseph F. Hook

Joseph F. Hook RI Bar no 5418
294 Valley Road
Middletown, RI 02842
(401) 846-5200

CERTIFICATE OF SERVICE

I the undersigned certify that on this 22nd day of June 2007, I served a copy of the within objection to Assistant US Attorney Dulce Donovan through the CM/ECF system.

/s/ Joseph F. Hook